**UNITED STATES of America, Plaintiff,**

v.

**Deon J. JACKSON, Defendant.**

**Crim. No. 89–198–01.**

United States District Court,
N.D. West Virginia,
Elkins Division.

Aug. 31, 1989.

William A. Kolibash, U.S. Atty., Wheeling, W.Va., for plaintiff.

Donald J. Tenant, Wheeling, W.Va., for defendant.

## ORDER

MAXWELL, Chief Judge.

On July 20, 1989 the Regular Grand Jury of this court now in being in this district returned a 16 count true bill charging the above-named individual and a codefendant with various violations of federal law including 18 U.S.C. §§ 2, 371, 844(h)(1), 844(i), 1341, and 1957(a). In Count 16 of the referenced indictment the Grand Jury

charges that on or about March 31, 1988 the above-named defendant engaged in a "monetary transaction in criminally derived property" in violation of Title 18, U.S.C. §§ 1957(a) and 2. Also in Count 16 the Grand Jury alleges that the above-named defendant "has property involved in such offense or traceable to such property, which said defendant obtained, directly or indirectly, in violation of Title 18, United States Code, Section 1957, and which property or proceeds are forfeitable to the United States pursuant to Title 18, United States Code, Section 982." The count also indicates that the United States intends to seek the forfeiture of substitute assets pursuant to 18 U.S.C. § 982(b) and 21 U.S.C. § 853(p) in the event that the referenced "property" cannot be sufficiently identified or isolated. On the motion of the government the indictment returned in this matter was sealed and a warrant was issued for the arrest of the above-named defendant. On further motion of the government on July 25, 1989 the indictment was unsealed and placed among the public records of this Court.

Upon consideration of the totality of the Grand Jury's charge in the above-referenced matter, gleaning therefrom facts considered in a light most favorable to the government's theory of prosecution and forfeiture, it would appear that defendant Deon J. Jackson a/k/a Sandy alone, and to varying degrees in conjunction with defendant Larry Miller, activated a scheme to burn certain improvements situated upon real estate in which defendant Jackson had an interest in order to be paid the proceeds from certain insurance policies which named Jackson as a full, partial, or alternate beneficiary.

Four events alleged in the indictment appear to form the framework of the sixteen count charge. The Grand Jury alleges in Count 1 that on March 23, 1985 defendant Jackson burned the residence at 3539 Eoff Street, Wheeling, West Virginia, and thereafter collected insurance proceeds on policies held with Travelers and Prudential Insurance Companies. Next, in Count 13, it is alleged that on November 5, 1986 defendants Jackson and Miller used fire to destroy the business and apartment building at 4031 Jacob Street, Wheeling, West Virginia, in an effort to obtain insurance proceeds from two European insurance companies. Third, in Count 14 it is alleged that defendant Jackson on October 21, 1988 attempted to burn a rental apartment building at 3539 Eoff Street, Wheeling, West Virginia. Fourth, in Count 15 it is alleged that on November 17, 1988 defendant Jackson burned the rental apartment building at 3539 Eoff Street, Wheeling, West Virginia. The Court would note that the addresses alleged in Counts 13, 14 and 15 are denominated as a "mailing address." The Court would note further that the addresses of the subject properties indicated in Counts 1, 14, and 15, are identical.

The first two of the above three referenced allegations of arson are enhanced through the first thirteen counts of the indictment, wherein the Grand Jury alleges that these defendants aiding and abetting one another, conspiring to commit the alleged offense, and/or acting individually, have committed several acts of mail fraud in violation of 18 U.S.C. § 1341, conspiracy to commit mail fraud in violation of 18 U.S.C. § 371, the use of fire to commit a felony in violation of 18 U.S.C. § 844(h)(1), and the use of fire to destroy a property used in interstate commerce in violation of 18 U.S.C. § 844(i). Finally, Count 16 alleges that defendant Jackson engaged in a monetary transaction in criminally derived property in violation of 18 U.S.C. § 1957(a). The counts of mail fraud alleged herein have to do with the defendants' efforts to collect proceeds from insurance policies held upon the 3539 Eoff Street and the 4031 Jacob Street properties allegedly burned on March 23, 1985 and November 5, 1986, respectively. The "criminally derived property" transaction alleged in Count 16 of the indictment represents defendant Jackson's handling of a check in the amount of $28,647.38 paid to her from her attorney. Apparently, the amount represents the gross recovery less attorneys fees from a civil action in which defendant Jackson successfully sought $34,000.00 in insurance proceeds apparently paid to this

defendant's land contract purchaser of the 4031 Jacob Street property, the amount having been paid by the Italian and English insurance companies subsequent to the November 5, 1986 burning of that property.

On July 26, 1989 the Court received the government's notice of hearing on request for Temporary Restraining Order and verified application in support thereof from Martin P. Sheehan, Assistant United States Attorney for the Northern District of West Virginia, wherein the government sought to have the Court enter a Temporary Restraining Order to preserve the availability of the defendant's assets for forfeiture in the event the government would ultimately prevail in this criminal matter. The government's request is premised upon 18 U.S.C. § 982 which incorporates by reference the provisions of 21 U.S.C. § 853. Essentially, the government seeks to have the above-named defendant restrained "from transferring any assets until she has first posted a performance bond of $28,647.38 which the government seeks to forfeit."

Initially, the government sought an *ex parte* restraining order under the provisions of 21 U.S.C. § 853, but the Court, based upon the sparce record then before it, declined to proceed in an *ex parte* fashion and set the matter for hearing which was subsequently held on July 26 and 28, 1989. On the basis of the matters presented at oral argument the Court determined that the issuance of a temporary restraining order was not justified and indicated to the parties that the determination was without prejudice to a further record being developed. The government then requested a hearing on a preliminary injunction in the matter and the same was set for August 2, 1989.

On August 2, 1989 the Court was advised that the parties had entered into a stipulation of facts and that the scheduled hearing would be unnecessary; however, counsel indicated that they would stand ready should the record indicate that further proceedings were necessary. Also, on August 2, 1989 the Court received by Panafax a copy of the government's Motion For Preliminary Injunction, the parties' Stipulation of Facts with attachments thereto, and the government's Brief in Support of Motion for a Preliminary Injunction.

In its brief the government seeks to address the issues raised and suggested in this matter at the above-referenced hearing and reasserts that the government "believes it is entitled to an order under 21 U.S.C. § 853(a) as incorporated into 18 U.S.C. § 982(b) restraining the defendant from disposing of any assets until an adequate performance bond is posted."

18 U.S.C. § 982(a) provides, in pertinent part, as follows:

> The Court, in imposing sentence on a person convicted of an offense in violation ... of Section 1956 or 1957 of this title, shall order that the person forfeit to the United States any property, real or personal, *involved in such offense,* or any property *traceable to such property.* (Emphasis supplied.)

Subsection (b) of § 982 provides, in pertinent part, as follows:

> The provisions of subsections 413(c) and (e) through (p) of the Comprehensive Drug Abuse Prevention and Control Act of 1970 (21 U.S.C. § 853(c) and (e)–(p)) shall apply to property subject to forfeiture under this section, to any seizure or disposition thereof, and to any administrative or judicial proceedings in relation thereof, *if not inconsistent with this section.* (Emphasis supplied.)

The government's theory of forfeiture in this post-indictment, pre-trial proceeding invokes 18 U.S.C. § 982 and, by incorporation, 21 U.S.C. § 853. In relating the facts of this case to the statutory language of the referenced Sections, the legislative history submitted with the Comprehensive Drug Abuse Prevention and Control Act of 1970, the Psychotropic Substances Act of 1978, the Comprehensive Crime Control Act of 1984 and the Anti Drug Abuse Acts of 1986 and 1988 are worthy of note.

"Congress first acted to provide for criminal forfeiture when it passed the Racketeer Influence and Corrupt Organizations statute [18 U.S.C. § 1961 *et seq.* (hereinafter RICO) ] and the Continuing Criminal Enterprise statute [21 U.S.C. § 848 (herein-

after CCE)]. These statutes address, respectively, the conduct, acquisition, and control of enterprises through patterns of racketeering activity, and the operation of groups involved in patterns of serious drug offenses." S.Rep. No. 225, at 193, reprinted in 1984 *U.S. Code Cong. & Admin. News* at 3182, 3376 (hereinafter "Senate Report").

In 1978, in an attempt to undermine the economic incentives of trafficking in illegal drugs, Congress amended Section 511 of Title II of the Comprehensive Drug Abuse Prevention and Control Act of 1970 (codified as amended at 21 U.S.C. § 881) with language tailored to reach assets exchanged for, intended to be exchanged for, or traceable to an exchange for illicit controlled substances. The legislative history of this facet of the continuing Congressional effort to stem the tide of illegal drug trafficking is instructive:

> In addition it provides for forfeiture of property which is the proceeds of an illegal drug transaction only if there is a traceable connection [between] such property and the illegal exchange of controlled substances. Thus, if such proceeds were, for example, commingled with other assets, involved in intervening legitimate transactions, or otherwise changed in form: they would still be subject to forfeiture, but only to the extent that it could be shown that a traceable connection to an illegal transaction in controlled substances existed.

Joint Explanatory Statement of Title II and III [of the Psychotropic Substances Act of 1978] 124 *Congressional Record* S 17,647 reprinted in 1978 *U.S. Code Cong. & Admin.News* at 9496, 9518, 9522.

Designed to further enhance the use of forfeiture, particularly criminal forfeiture, as a law enforcement tool in combatting two of the most serious crime problems facing the country, namely racketeering and drug trafficking, amendments to the Comprehensive Drug Abuse Prevention and Control Act of 1970 (21 U.S.C. § 841 *et seq.*) were enacted on October 12, 1984 as Title II of the Comprehensive Crime Control Act of 1984, Public Law 98–473, 98 Stat. 2044. Although Congress had recognized many years prior to the enactment of the RICO and CCE statutes that the conviction of individual racketeers and drug dealers would be of only limited effectiveness if the economic power bases of criminal organizations or enterprises were left intact and had enacted forfeiture authority designed to strip these offenders and organizations of their economic power, it appears that the subject provisions of the Comprehensive Crime Control Act of 1984 were intended to eliminate certain statutory limitations and ambiguities that had frustrated the active pursuit of forfeiture by federal law enforcement agencies. Senate Report at 191.

Addressing problems described as having to do with the scope of the property subject to forfeiture; the phenomenon of defendant's defeating forfeiture by removing, transferring, or concealing assets prior to conviction; the need to pursue virtually all forfeitures of drug related property through civil proceedings; and, the enormous financial burden which the aggressive pursuit of forfeiture cases places upon law enforcement agencies, Congress sought to improve the procedures applicable in these types cases through the enactment of the Title II forfeiture amendments. In particular, Section 302 of Title II sets forth an amended version of 18 U.S.C. § 1963, the provision of the then current law governing criminal forfeiture under the RICO statute. Moreover, through the enactment of Section 302 Congress provided a new criminal forfeiture statute that would be applicable in all felony drug cases. The provisions of the new criminal forfeiture statute for major drug offenses were intended to closely parallel those of the RICO forfeiture provisions amended in Section 302. Senate Report at 198. Of note, the legislative history submitted with Section 302 strongly suggests that the preconviction transfers sought to be curtailed or voided were those made in bad faith in order to dilute otherwise forfeitable assets beyond the reach of the forfeiture statutes. Senate Report at 200–01. By enacting 18 U.S.C. § 1963(d), a new provision to the law, Congress sought to make substitute assets of equivalent value available for for-

feiture in cases where the property determined to be subject to forfeiture is no longer available at the time of conviction.

18 U.S.C. § 982 was enacted on October 27, 1986 as Section 1366(a) of Title I of the Anti Drug Abuse Act of 1986, Public Law 99–570, 100 Stat. 3707–39. Section 1153(b) of Title I of the same Act also modified 21 U.S.C. § 853 by adding a new subsection (p) to provide for the forfeiture of substitute assets in the event that the subject property is actually or practically beyond the reach of the forfeiture provisions; however, because of the sequence in which these new provisions were drafted, § 982 incorporated only subsections (c) and (e) through (*o*) and failed to incorporate the new subsection (p). 134 *Congressional Record* S. 17365. Although it is clear from the legislative history that Congress intended to incorporate into Section 982 "all the procedures for criminal forfeiture set out in Title 21" (*See* Senate Report 99–433 at 24 (1986)), it was not until November 18, 1988 that Congress actually amended Section 982 to reference the incorporation of the new subsection (p). *See* §§ 6463(c) and 6464 of Title VI of the Anti Drug Abuse Act of 1988, Public Law 100–690, 102 Stat. 4374–75.

On August 22, 1989 the Court received by Panafax defendant Jackson's Memorandum of Law in Opposition to the Government's Motion for an Injunction. Although the defendant indicates agreement with the position of the government in many respects, the defendant expresses concern with respect to the co-interest of Bentley Jackson, apparently the spouse of the above-named defendant, in the property sought for forfeiture herein and in particular the property sought as forfeitable "substitute property." Although the stipulation of facts submitted by the defendant and the government in this matter on August 4, 1989 reflects that Deon J. Jackson has ownership interest in five parcels of property, the "joint ownership" issue raised by the defendant's memorandum is not detailed by the stipulation of facts. Moreover, the nexus, if any there be, between the real properties referenced in the within indictment and those referenced in the stipulation of facts submitted by the parties is not indicated. The defendant also asserts that inasmuch as 21 U.S.C. § 853(p) was not cross-referenced until November of 1988, it is inapplicable to the present indictment.

In its August 25, 1989 reply brief the government indicates that it is indifferent as to which assets of Deon J. Jackson are affected by the restraint which the Government seeks: the government merely reasserts its concern that $28,647.38 be available at the close of the criminal action for forfeiture should the government prevail on its theory of the underlying matters. With respect to the Defendant's argument regarding subsection (p) of 21 U.S.C. § 853, the government asserts that there is no ambiguity in the law with regard to the cross reference of subsection (p). In support of its position the government cites *United States v. Ginsburg,* 773 F.2d 798 (7th Cir.1985) and *United States v. Amend,* 791 F.2d 1120 (4th Cir.1986).

■ Inasmuch as it appears that the violation of Title 18 U.S.C. §§ 1957(a) and (2) are alleged in Count 16 of the indictment to have been committed "[o]n or about March 31, 1988," the Court believes that the defendant's position with regard to the applicability of the new subsection (p) is well taken. Notwithstanding the time lapse between the criminal activity alleged in Count 16 of the indictment and the effective date of the cross reference in 18 U.S.C. § 982(b) to include subsection (p), 18 U.S.C. § 982(a) provides that the Court, in imposing a sentence upon a person convicted of 18 U.S.C. § 1957, shall order that person to forfeit property "involved in such offense, or any property traceable to such property." Subsection (b) of Section 982 provides that the provisions of 21 U.S.C. § 853(c) and (e)–(p) shall apply to property subject to forfeiture under Section 982 "if not inconsistent with this section."

■ In the stipulation of facts it is indicated that the government's evidence, viewed in a light most favorable to the government, would show that the above-named defendant "negotiated a check from William J. Ihlenfeld which represented the

proceeds of an insurance company settlement for the fire at the 'Silver Bullet' bar" but that the government "has been unable to track the funds further." Inasmuch as it would not appear, upon review of the entire record of this criminal matter, that the property which the government seeks to have the above-named defendant enjoined from transferring, namely "assets of any kind," is property which was *involved* in violation of 18 U.S.C. § 1957 or *traceable to such property*, the Court believes that the preliminary restraint which the government seeks in this matter is over-broad and not envisioned by the statute or case law which the government offers in support of its theory of forfeiture in this matter.

Reserving to a later time upon a full evidentiary record the question of whether the broad sweep of Congressional initiatives to curtail traditionally recognized racketeering activity and traditionally recognized narcotics trafficking also gives the government inroads to seek forfeiture under the facts as presented here, indeed to seek to have the defendant enjoined from transferring any assets of any kind prior to a determination of guilt in the underlying matter, when the overriding purpose of the Congressional initiatives is to strip racketeers and drug dealers of their economic wherewithal to facilitate racketeering and controlled substance law violations, the Court will deny the government's Motion for Preliminary Injunction without prejudice to the United States' further development of the record herein in support of the relief it requests.