**UNITED STATES of America**

v.

**SWANK CORPORATION, et al.**

**No. CR 92–59.**

United States District Court,
E.D. Virginia,
Richmond Division.

July 2, 1992.

S. David Schiller, G. Wingate Grant, Asst. U.S. Attys., Richmond, Va., for plaintiff.

Brodnax Haskins, and Thomas W. Williamson, Jr., Richmond, Va., for defendants.

## MEMORANDUM OPINION

RICHARD L. WILLIAMS, District Judge.

This matter is before the Court on the Defendant's Motion to Modify the Restraining Order entered by the Court on April 20, 1992. Also pending is the Receiver's Application for Determination of Authority to Pay Legal Expenses.

For the reasons stated below, the Defendant's motion is denied in part and granted in part. In addition, the Receiver is instructed to not pay the legal expenses of the Swank Defendants out of corporate funds.

## FACTUAL BACKGROUND

In 1972, Donald Swank, Sr. founded the Swank Corporation, an office supplies sales

business, and he remains its president and sole stockholder. By the late 1980's, the Swank Corporation had over 600 accounts with businesses, law firms, and other customers situated throughout the eastern portion of the United States, from Philadelphia to Atlanta. It earned gross annual sales of several million dollars per annum.

On April 20, 1992, Swank and eleven of the Corporation's sales representatives were indicted for conspiracy, mail fraud, bank fraud and money laundering. On May 19, 1992, a superseding indictment added additional counts of money laundering and witness tampering. Counts 36–41 of the superseding indictment allege six violations of 18 U.S.C. § 1956(a)(1)(A)(i), which total $4,982,369 in laundered money. Each of these counts demands that the Defendants "forfeit all property ... involved in said offense and all property traceable to such property" pursuant to 18 U.S.C. § 982.

Upon the Government's motion, the Court entered an *ex parte* order on April 20, 1992, which, *inter alia,* restrained and enjoined the Swank Defendants from "transferring, conveying, liquidating, encumbering, wasting, secreting, modifying the terms of or otherwise disposing of any real or personal property described in the Indictment in this case *or any other property in which they have an interest....*" (emphasis added.) The Restraining Order contains only one proviso for relief from its restraint:

> In the event that a defendant desires to transfer, convey, liquidate or encumber any property and if the United States consents to such transfer, the transfer may be made upon condition that all sales proceeds shall be placed in escrow in an account(s) approved by counsel for the government. In the event that forfeiture is ultimately ordered, any funds received from the sale of property for the actual property forfeited shall be substituted for the actual property and such funds shall also be available to satisfy an order forfeiting substitute assets pursuant to 21 U.S.C. § 853(p) and 18 U.S.C. § 982(b)(1)(A)....

By Order dated June 9, 1992, leave of Court was granted to Thomas Williamson, Jr. for a special appearance to make the instant motion. The sole purpose of the motion is to permit the release of assets to Mr. Swank to enable him to retain counsel of his choice—namely, the law firm of Williamson & Stoneburner. Swank seeks the entry of an order modifying the Restraining Order for the purpose of permitting Swank to alienate, transfer, convey, liquidate or encumber real estate owned by Donald Swank personally and acquired prior to 1987.

## ARGUMENT AND DISCUSSION OF AUTHORITY

### I. MOTION TO MODIFY RESTRAINING ORDER

#### A. *Applicable Law: The Substantial Connection Standard*

█ Criminal forfeiture proceedings are actions *in personam.* *United States v. Amend,* 791 F.2d 1120, 1128 (4th Cir.1986). Thus, forfeiture is imposed "directly on an individual as part of a criminal prosecution rather than in a separate proceeding *in rem* against the property subject to forfeiture." *United States v. Huber,* 603 F.2d 387, 396 (2d Cir.1979). The Government must allege forfeiture in the indictment and must carry the burden of proof beyond a reasonable doubt. Fed.R.Crim.P. 7(c)(2).

The applicable federal criminal forfeiture sections set forth the statutory requisites. 18 U.S.C. § 982(a)(1), provides in pertinent part, as follows:

> The Court, in imposing sentence on a person convicted of an offense in violation of ... section 1956 or 1957 of this Title, shall order that the person forfeit to the United States any property, real or personal, involved in such offense, or any property traceable to such offense.

This provision goes on to state that property subject to forfeiture under § 982(a)(1), any seizure or disposition thereof, or any judicial proceeding in relation thereto, shall be governed by sections (c) and (e) through (p) of section 413 of the Comprehensive Drug Abuse Prevention and Control Act of

1970 (21 U.S.C. § 853). *Id.* at § 982(b)(1)(A).

Section 982(a)(1) of Title 18 U.S.C. has been construed as authorizing forfeiture of an entire bank account or business which was used to "facilitate" the laundering of money in violation of 18 U.S.C. § 1956. *See, e.g., United States v. All Monies ($477,048.62) in Account No. 90–3617–3,* 754 F.Supp. 1467, 1473 (D.Haw.1991). The Fourth Circuit has interpreted this concept of "facilitation" to require that the forfeited property be used in "substantial connection" with the criminal activity. To be forfeitable, there must be a substantial connection between the property and the illegal activity. *United States v. Schifferli,* 895 F.2d 987, 989–990 (4th Cir.1990). There must be more than an incidental connection between the property and the illegal activity, but the property need not be indispensable to the commission of the offense. *United States v. Premises Known as 3639–2nd St., N.E.,* 869 F.2d 1093, 1096 (8th Cir.1989). Nor does the property need to be exclusively used for illegal activities. *Schifferli,* 895 F.2d at 991. If a portion of the property is used to facilitate the offense, then all of the property is forfeitable. *United States v. Santoro,* 866 F.2d 1538, 1542 (4th Cir.1989). In sum, any property involved in illegal activity may be said to "facilitate" the criminal activity, and thereby causes such property to be forfeitable.

### B. *Property Acquired Prior to 1987*

Under the "substantial connection" standard, the property in question must be used or intended to be used to commit a crime, or must facilitate the commission of a crime. *Schifferli,* 895 F.2d at 990. The earliest year in which the Swank Defendants are alleged to have committed criminal offenses is 1987. Prior to 1987, Swank had acquired a number of parcels of real estate. These properties, Swank argues, were not "involved" in the alleged offenses of money laundering nor do they constitute

property "traceable to such property." Accordingly, Swank contends that these parcels of real estate are not subject to forfeiture pursuant to 18 U.S.C. § 982 and should not, therefore, be subject to pretrial restraint.

Because there is no "substantial connection" between the restrained property and the criminal activity, Swank maintains that the Restraining Order obtained by the Government works an impermissible restriction on real estate or other property which was purchased or obtained by the Swank Defendants prior to the alleged date of the commission of the specified unlawful activity. In short, Swank asks that be allowed to use such assets as he sees fit, including retaining legal counsel of his choice.

### C. *Restraint of Pre–1987 Property as "Substituted Assets"*

■ The Government does not disagree with Swank's contention that the assets held by Swank in his individual capacity and acquired prior to 1987 have no "substantial connection" with Mr. Swank's alleged illegal activity. However, with one exception, the Government objects to modifying the Restraining Order. The United States argues that the date of acquisition of Swank's properties is immaterial, as the whole purpose of the statutory provision providing for substitution of assets is to enable the government to satisfy an order of forfeiture out of property which is not otherwise subject to forfeiture. 21 U.S.C. § 853(p); *see In re Billman,* 915 F.2d 916, 921 (4th Cir.1990) ("the purpose of § 1963(d)(1)(A) is to preserve pending trial the availability for forfeiture of property that can be forfeited after trial"),[1] *cert. denied,* —— U.S. ——, 111 S.Ct. 2258, 114 L.Ed.2d 711 (1991).

21 U.S.C. § 853(p) states in full:

If any of the property described in subsection (a), as a result of any act or omission of the defendant—

---

1. Section 1963(d)(1)(A) is essentially identical to 21 U.S.C. § 853(e)(1)(A) which is applicable in this proceeding as incorporated by 18 U.S.C. § 982(b)(1)(A). In fact, the Fourth Circuit has recognized the "analogous provisions dealing with forfeiture arising out of trafficking in drugs" in *Billman.* 915 F.2d at 921.

(1) cannot be located upon the exercise of due diligence;

(2) has been transferred or sold to, or deposited with a third party;

(3) has been placed beyond the jurisdiction of this court;

(4) has been substantially diminished in value; or

(5) has been commingled with other property which cannot be divided without difficulty;

the court shall order the forfeiture of any property of the defendant up to the value of any property described in paragraphs (1) through (5).

The superseding indictment charges six discrete counts of money laundering which total $4,982,369 in laundered money. This money is alleged to have been laundered through the corporate accounts of the Swank Corporation. Of the amount of money alleged to have been laundered, $1,482,369 is money that presumably has long since been spent, either through payment of salaries or expenses of the corporation, and any of that money which Donald Swank personally received has likewise been dissipated. The balance of $3,500,000 is within the custody of the Court but, as is discussed below, cannot be used to satisfy an order forfeiting substitute assets. If Mr. Swank is convicted of counts 36–41, he will be personally liable to the United States in a judgment for $4,982,369. The United States maintains that the Court has no choice but to continue to restrain assets worth at least that amount if there is to be any reasonable likelihood that an order of forfeiture against Donald Swank could ever be satisfied.

The Government's position is strongly supported by the recent Fourth Circuit opinion of *In re Billman,* 915 F.2d 916 (4th Cir.1990). In *Billman,* a RICO case that involved similar forfeiture provisions to those of the instant case, a third party petitioned the court to release from restraint certain funds that had been given the third party by the defendant. In releasing the funds from restraint, the district court held that the forfeiture statute provides authority to restrain prior to trial "only those assets which the government proves are connected to the [defendant's] alleged racketeering activity." *Id.* at 917. Based on the inferences drawn by the district court, the Fourth Circuit assumed that the funds in question were not the product of illegal activity. *Id.* at 920.

Despite this assumption, the Fourth Circuit overruled the trial court. The *Billman* court noted that forfeiture is an *in personam* proceeding and that forfeiture constitutes partial punishment for the offense. *Id.* (citing *United States v. Conner,* 752 F.2d 566, 576 (11th Cir.1985)). Thus, "a forfeiture money judgment can be satisfied out of any of the defendant's assets." *Billman,* 915 F.2d at 920 (citing *United States v. Ginsburg,* 773 F.2d 798, 800–03 (7th Cir.1985)). Consequently, after a conviction on a forfeiture count, the district court may order forfeiture of the defendant's substitute assets.

The *Billman* Court then examined the question of whether substitute assets could be restrained pending trial and ruled in the affirmative. 915 F.2d at 920–21. With an eye to the remedial purposes of the forfeiture statute, the court read the provision allowing for a restraining order in connection with the substitute assets provision as calling for the preservation and restraint of substitute assets pending trial. *Id.* at 921; *see also United States v. Skiles,* 715 F.Supp. 1567 (N.D.Ga.1989) (holding in the drug trafficking context that the government is allowed to restrain "additional" assets, pre-trial, to ensure sufficient assets for forfeiture).

The Fourth Circuit in *Billman* relied on *United States v. Monsanto,* 491 U.S. 600, 109 S.Ct. 2657, 105 L.Ed.2d 512 (1989), in concluding that the statute should be construed to authorize pre-trial restraint of substitute assets. 915 F.2d at 921. The Supreme Court in *Monsanto* had stated that "[p]ermitting a defendant to use assets for private purposes that, under [21 U.S.C. § 853(c) ], will become the property of the United States if a conviction occurs, cannot be sanctioned." 109 S.Ct. at 2665. Lastly, the Fourth Circuit held that the pre-trial restraint of substitute assets violates

neither the defendant's Sixth Amendment right to counsel nor the Due Process Clause of the Constitution. *Billman,* 915 F.2d at 922.

The Defendant labels *Billman* a "result-oriented" decision and asks this Court to limit the holding in that case to its particular facts. However, while the crime underlying the *Billman* case may be more serious than that alleged here, this Court cannot casually disregard the statutory construction and general principles set forth by the court in *Billman,* as the Defendant requests.

Furthermore, the cases cited by the Defendant, *United States v. Chinn,* 687 F.Supp. 125 (S.D.N.Y.1988) and *United States v. Jackson,* 718 F.Supp. 1288 (N.D.W.Va.1989) as support for its argument are inapposite and unpersuasive. First, both decisions pre-date the Fourth Circuit's opinion in *Billman.* In addition, the *Billman* Court expressly criticized the reasoning of *Chinn.*[2] 915 F.2d at 919. The Defendant also stands on shaky ground in relying on *Jackson.* In that case, the reason why the district court declined to grant a pre-trial order restraining the defendant's substitute assets was because the criminal activity was alleged to have taken place before the effective date that 21 U.S.C. § 853(p) (the substitute assets provision) was incorporated by reference into 18 U.S.C. § 982(b). 718 F.Supp. at 1292. The court in *Jackson* expressly reserved to a later time a ruling on the question that is now before the Court regarding Mr. Swank. *Id.* at 1293.

In its initial brief, the Defendant makes the following statement:

> The government may contend the pre–1987 real estate may be restrained as 'substituted assets.' ... However, the other assets restrained by the Restraining Order should be sufficient to satisfy any forfeiture verdict.

(Def.Br. at 11.) This statement appears to reflect a misunderstanding as to the opera-tion and interplay of the substitute assets provision and outright forfeiture of assets used to facilitate criminal behavior. *See* 21 U.S.C. § 853(p); 18 U.S.C. § 982.

The indictment alleges that the Corporation is "property involved in" the offense of money laundering and 18 U.S.C. § 982(a)(1) mandates the forfeiture of such property. The Government claims that the corporate bank accounts were used to conduct financial transactions involving the proceeds of monies which represent the proceeds of mail fraud activity in violation of 18 U.S.C. § 1956(a)(1), and, if the jury so finds, this requires forfeiture of the Corporation itself. The ability to forfeit a business entity which is used to facilitate the offense of money laundering is well established. *See, e.g., United States v. South Side Finance Inc.,* 755 F.Supp. 791, 797–98 (N.D.Ill.1991) (a business through which laundered money is moved is forfeitable as property involved in the money laundering offense). Accordingly, any particular asset of the Swank Corporation, including the $3.5 million in cash, will be forfeited upon conviction, and, therefore, must be restrained in order to preserve the asset for forfeiture. 21 U.S.C. § 853(e)(1); *see Billman,* 915 F.2d at 921.

If the Defendants believe that assets of Swank Corporation could be used to satisfy any judgment of forfeiture directed to Donald Swank personally, they are mistaken; such a result would not be possible if the jury also forfeits the Swank Corporation as "property involved in" the illegal transactions. Under the relation back doctrine of 21 U.S.C. § 853(c), all "right, title, and interest in property [subject to forfeiture] vests in the United States upon the commission of the act giving rise to forfeiture ...." Thus, assuming a favorable jury verdict for the prosecution, the Corporation will be deemed to be property of the United States as of some point in time long before any money judgment of forfeiture is imposed on Mr. Swank personally. Any order

---

**2.** The Fourth Circuit in *Billman* stated that:

> The district court's decision is consistent with the only reported case that deals with pretrial restraint of substitute assets in the hands of a third person. *United States v. Chinn,* 687 F.Supp. 125 (S.D.N.Y.1988).

The Fourth Circuit then proceeded to reverse the district court's decision.

of forfeiture for substitute assets would have to be satisfied out of something which was not itself subject to forfeiture. Any other construction would allow one to satisfy a substitute forfeiture judgment with property that belongs to the United States and thereby render meaningless the substitute asset provision of the statute. In short, if Swank Corporation is forfeited as property involved in the offense, and if Donald Swank is found guilty of violating 18 U.S.C. § 1956 and ordered to forfeit the money involved in those transactions, nothing held by Swank Corporation could be used to satisfy the personal money judgment against Mr. Swank.

The Defendant disputes the fact that the entire Swank Corporation may be subject to forfeiture as property involved in the offense under 18 U.S.C. § 982(a)(1). The Defendant reasons that because the amounts alleged to have been laundered through the corporate accounts are *de minimis* in relation to the value of the assets and the extent of legitimate business of the Swank Corporation, it would be unjust for the entire corporation to be forfeited. This argument, however, has been rejected by the courts of this circuit and others.

Even if a portion of the property sought to be forfeited is used to "facilitate" the alleged offense, then all of the property is forfeitable.[3] Moreover, the facilitation of a single felony offense is sufficient to justify forfeiture. *See United States v. Santoro,* 866 F.2d 1538, 1542 (4th Cir.1989). The so-called "substantial connection" test is not a measure of the amount of money laundered, and the proportionality between the value of the forfeitable property and the severity of the injury inflicted by its use is irrelevant. *See United States v. Premises Known As 3639–2nd St. N.E.,* 869 F.2d 1093, 1096 (8th Cir.1989). In other words, the *quantity* of money laundered can be relatively small, so long as the *quality* of the relationship between the forfeitable property and the crime is substantial. *See id.* at 1098 (Arnold, C.J. concurring).

In this case, the Government alleges that the Defendants cleared the proceeds of specified mail fraud activity through the Swank Corporation's bank accounts. Limiting forfeiture under these circumstances to the proceeds of the initial fraudulent activity would effectively undermine the purpose of the forfeiture statute. Criminal activity such as money laundering largely depends upon the use of legitimate monies to advance or facilitate the scheme. It is precisely the commingling of tainted funds with legitimate money that facilitates the laundering and enables it to continue. *See United States v. Certain Funds on Deposit in Account No. 01–0–71417,* 769 F.Supp. 80, 84–85 (E.D.N.Y.1991).

### D. *Partridge Hill Farm*

■ The Government states that Donald Swank personally owns at least three parcels of improved real estate and three parcels of land. These are 2934 Everleigh Way, Fairfax; 3147 Ellenwood Drive, Fairfax; 166 Kirkbride Road, Vorhees NJ; and land in the Columbia area of Goochland County. Because of the need to restrain sufficient assets which could be available to satisfy an order forfeiting substitute assets, the United States believes that the Court should maintain the restraint on these properties. Indeed, this appears to be the only property of Donald Swank which could be used to satisfy a substitute asset order.

However, with respect to the property known as Partridge Hill Farm, the Government does not oppose modification of the Restraining Order so as to release this property from any restraint associated with this case. Since the time the Restraining Order was entered, the Government has learned that this property is held as tenants by the entirety by Donald Swank and Betty Swank, and not as an individual asset of Mr. Swank. Because of the practical considerations associated with forfeiture of property held as tenants by the entirety,

---

**3.** "Facilitating" property occurs when the property as used makes the underlying criminal activity less difficult or "more or less free from

hindrance." *United States v. Schifferli,* 895 F.2d 987, 990 (4th Cir.1990).

the Government does not object to a modification of the Restraining Order to release this one property from restraint.

Inquiry to the Goochland tax assessor's office indicates that the assessed value of Partridge Hill Farm is $367,000. Thus, it is possible that Mr. Swank's one-half interest in the property would be sufficient to allow him to borrow against the equity in the farm a sufficient sum of money which could be used to retain counsel of his choice.

### E. *Conclusion*

In this case, the Government has identified the theories upon which the various assets are subject to forfeiture, i.e., outright in the case of the Corporation, and as potential substitute assets in the case of most property Swank owns personally. Assets that have been targeted and restrained as potentially forfeitable cannot be used to pay legal fees. Mr. Swank's real property holdings are potentially forfeitable as substitute assets. Thus, the Restraining Order will not be modified to allow Mr. Swank to sell off his assets. The only exception to this ruling is Partridge Hill Farm, which will be removed from restraint and which can be used by Mr. Swank to pay his legal fees.

The Court is frankly concerned by the scope and breadth of the potential forfeiture judgment which may be rendered against Mr. Swank. As president and sole stockholder of the Swank Corporation, Mr. Swank stands to lose millions if his corporation is forfeited as property involved in the offense of money laundering. Above and beyond this loss, Mr. Swank could be called upon personally to satisfy a forfeiture claim of almost $5 million. While the Court realizes that the federal forfeiture provisions are purposely broad remedies, it is certain that they were not intended to provide an unconstitutional windfall for the government. Thus, the Court wishes to make clear that nothing in the Court's opinion today forecloses the possibility that a given use of the forfeiture statutes may violate the Excessive Fines Clause of the Eighth Amendment.

■ Forfeiture under section 853 is clearly "punishment" as that term is used in the Eighth Amendment. Moreover, the Supreme Court has held that the Eighth Amendment "prohibits not only barbaric punishments, but also sentences that are disproportionate to the crime committed." *Solem v. Helm,* 463 U.S. 277, 103 S.Ct. 3001, 77 L.Ed.2d 637 (1983). This Court recognizes that a district court must avoid unconstitutional results by fashioning forfeiture orders that stay within constitutional bounds. Although this question is not now before me, the Court recognizes that before forfeiture is ultimately ordered, a district court must make a determination, based upon appropriate findings, that the interest ordered forfeited is not so grossly disproportionate to the offense committed as to violate the Eighth Amendment. If, at a later date, the Defendant raises a claim that the full force of permissible forfeiture under 18 U.S.C. § 982 and 21 U.S.C. § 853 may be grossly disproportionate to the offense committed, this Court will discharge its constitutional function by giving the matter careful scrutiny.

## II. RECEIVER'S APPLICATION FOR DETERMINATION OF AUTHORITY TO PAY LEGAL EXPENSES

■ The Receiver, Kevin Huennekens, also asks the Court to make a determination as to whether the Receiver is authorized to pay certain legal expenses of the Swank Corporation. On May 1, 1992, the Receiver was presented with a number of invoices requesting payment of certain retainers and other legal expenses incurred by Swank Defendants in connection with this case. Since this date, the Receiver has received additional requests for payment of legal fees and for reimbursement of legal fees incurred. More such requests are likely to be forthcoming.

The Receiver has located a corporate resolution dated September 12, 1991, approving reimbursement of expenses incurred by certain of Swank Corporation's employees in connection with this case. But for the forfeiture action pending against the company and the Restraining Order previously

entered, it would appear that the invoices represent legal obligations of the company. The Receiver seeks advice as to whether to pay these invoices or not.[4]

The Government opposes the payment of any of the matters set forth in the application by the Receiver. The Receivership Order has allowed the Corporation to stay in business, but nothing in that Order was intended to permit the corporation's assets to be used to pay expenses that were incurred by individual employees of the Corporation. The fact that the Corporation purportedly passed a resolution authorizing advancement of legal expenses in connection with the criminal case does not change the fact that the asset (the Corporation) out of which those expenses are sought to be paid is subject to forfeiture. The Supreme Court has specifically held that property subject to forfeiture may not be used to pay counsel fees. *Caplin & Drysdale v. United States*, 491 U.S. 617, 109 S.Ct. 2646, 105 L.Ed.2d 528 (1989). Clearly, the corporate defendant has no right to diminish the asset to be forfeited, the corporation itself, for attorney's fees or any other expense. In agreeing to the Receivership Order, the Government only consented to allowing the Corporation to continue to do business. It did not agree to letting assets which are subject to forfeiture to be used by the Defendants to pay off legal debts.

*Caplin & Drysdale* has made this issue very clear. The Government is correct—assets subject to forfeiture cannot be used to pay legal fees. Thus, the Receiver is instructed not to pay the legal invoices.

In the event that this case does not result in an order of forfeiture, the Corporation will be free to pay such of its debts as it chooses. Should the Corporation be forfeited to the United States, there exist two potential mechanisms whereby individuals who have a claim against the Corporation may seek redress. First, any person asserting a legal interest in property that has been forfeited may petition the Court for a

hearing to adjudicate the validity of his interest in the property. In appropriate instances, the Court may grant relief. 21 U.S.C. § 853(n). Secondly, a person adversely affected by a forfeiture may seek relief through a petition for remission or mitigation directed to the Attorney General. Section 853(i) provides that the Attorney General is authorized to grant petitions for mitigation or remission of forfeiture or take any other action to protect the rights of innocent persons which is in the interests of justice. 21 U.S.C. § 853(i).

## CONCLUSION

For the reasons stated above, the Defendant's motion to modify the Restraining Order is denied for the most part, with the exception that Partridge Hill Farm will be removed from the purview of the Order. In addition, the Receiver be instructed to not pay the legal expenses of the Swank Defendants out of corporate funds.

---

4. The Court has dealt with this issue before. On May 5, 1992, Defendant Arrington filed a motion for relief from the Restraining Order in which he sought permission to have payment of counsel fees made to his attorney, Mr. Dohnal,

with a provision that such fees be not subject to forfeiture. Counsel for Defendants Belcher and Clark orally joined in this motion. The Court's Order of May 13, 1992 resolved these claims against Messrs. Arrington, Belcher, and Clark.