UNITED STATES of America, Plaintiff,

v.

ELEVEN VEHICLES, et al., Defendants.

Civ. A. No. 91–6779.

United States District Court,
E.D. Pennsylvania.

Oct. 21, 1993.

---

**1150**

Pamela Foa, Asst. U.S. Atty., Michael M. Baylson, Sonia C. Jaipaul, U.S. Attys. Office, Philadelphia, PA, for U.S.

Charles H. Ivy, Scoggins, Ivy & Goodman, P.C., Atlanta, GA, for Robert Clyde Ivy and Irene Ivy.

Robert Clyde Ivy, pro se.

Wayne K. Radcliffe, pro se.

Bruce A. Franzel, Philadelphia, PA, for Terrance P. Faulds.

Terrance P. Faulds, pro se.

Irene Ivy, pro se.

Fred D. Furman, Kleinbard, Bell & Brecker, Philadelphia, PA, for Kleinbard, Bell & Brecker.

James H. Foster, Mellon Bank, N.A., Harrisburg, PA, for Mellon Bank, N.A.

John H. Whitmoyer, Henry & Beaver, Lebanon, PA, for Lebanon Valley Nat. Bank.

Elaine K. Radcliffe, pro se.

Michelle E. Radcliffe, pro se.

## MEMORANDUM

ROBRENO, District Judge.

Claimants Robert C. Ivy and Irene Ivy (the "Ivys") seek recovery of various properties seized by the U.S. Government, the plaintiff in this action, pending their forfeiture as proceeds of money laundering and/or wire fraud. The Ivys have filed a motion for summary judgment. For the following rea-

sons, the motion will be granted in part and denied in part.[1]

## I. BACKGROUND

The Government seeks the forfeiture of properties that are allegedly the proceeds of money laundering and/or wire fraud. The accusation of criminal activity giving rise to this forfeiture action is currently pending in a parallel criminal proceeding before this Court, *United States v. Armaments Corporation of South Africa, Ltd., et al.*, Crim.A. No. 91–602 (E.D.Pa.) [hereinafter *ARMSCOR* ].[2] Claimant Robert Ivy, along with various individuals and corporate entities, is charged with a passel of crimes, including conspiracy, securities fraud, and violation of the Arms Export Control Act.[3] Of import to the instant case are the six counts of money laundering, in violation of 18 U.S.C. §§ 1956, 1957, and the two counts of wire fraud, in violation of 18 U.S.C. § 1343, charged in the *ARMSCOR* indictment. *See* Pl.'s Complaint ex. 1 at 57–59, 61, 63, 65, 91–93 (the indictment in the *ARMSCOR* case). These crimes are the predicate offenses upon which the Government's forfeiture action is based. The applicable forfeiture statute, in relevant part, reads:

(a)(1) ... [T]he following property is subject to forfeiture to the United States:

(A) Any property, real or personal, involved in a transaction . or attempted transaction in violation ... of section 1956 or 1957 of this title, or any property traceable to such property.

. . . .

(C) Any property, real or personal, which constitutes or is derived from proceeds traceable to a violation ... of section ... 1343 of [this] title affecting a financial institution.

18 U.S.C. § 981(a)(1)(A), (C). The Government has alleged that the defendant properties *sub judice* are the proceeds of the money laundering and/or wire fraud violations outlined in the *ARMSCOR* indictment.

The claimants' motion for summary judgment asserts that the Government has failed to establish probable cause that the properties, particularly those acquired before the alleged acts of money laundering, are the proceeds of the predicate crimes. Claimants also argue that, to the extent probable cause is established, some of the properties are not subject to forfeiture, because they were owned either jointly or solely by Irene Ivy, a self-professed innocent owner. Finally, claimants allege that the retroactive application of § 981, as amended in 1988, to money laundering transactions that occurred pre–1988, is a violation of the ex post facto clause. *See* U.S. Const. art. I, § 9, cl. 3. Although not expressly argued by the parties, the issue of whether § 981, the forfeiture statute upon which the Government relies, can reach properties acquired by the Ivys before the enactment of §§ 1956 and 1957, the statutes that supply the predicate acts, is central to the disposition of the case.

## II. DISCUSSION

### A. *Standard of Review*

The standard for determining whether summary judgment is appropriate in

1. Claimants have also filed a motion for sanctions. This motion will be denied without prejudice, and may be reasserted at the conclusion of the litigation.
 Plaintiff has filed a motion to stay the proceedings, pursuant to 18 U.S.C. § 981(g). Since the case has proceeded since the filing of the motion, it will be denied, without prejudice, as moot. Plaintiff may renew its motion in light of this Memorandum if it so desires.
 Plaintiff has also filed motions to extend the time to respond to claimants' motion for summary judgment until after the disposition of its motion to stay proceedings and to extend the time in which to respond to claimants' motion for sanctions. The former motion is dismissed as moot, plaintiff having answered the summary judgment motion as the Court instructed at the hearing held in February. *See* Transcript of

Hearing on Motions at 37 (Feb. 2, 1993) [hereinafter Tr. of Hrg.]. The latter motion is also dismissed as moot, since the claimants' motion for sanctions has been dismissed.

2. The factual background to this complex criminal prosecution is too lengthy to be recited here in full. Judge Dubois, before whom the criminal prosecution is pending, has summarized the issues in a recent memorandum. *See United States v. Jasin*, Crim.A. No. 91–602–08, 1993 WL 259436, at *1–*3 (E.D.Pa. July 7, 1993).

3. Claimant Irene Ivy has been charged with no crime, a fact that plaintiff acknowledged at a hearing before this Court on February 2, 1993. *See* Tr. of Hrg. at 37.

a civil forfeiture proceeding is the same as that applicable in other civil actions, i.e., Federal Rule of Civil Procedure 56 and its interpreting case law. *See United States v. 717 S. Woodward St.*, 2 F.3d 529, 532 (3d Cir.1993); *United States v. One 1987 Cadillac DeVille*, 774 F.Supp. 221, 222–23 (D.Del.1991). Summary judgment shall be granted if the record before the Court shows that "there is no genuine issue as to any material fact and that the moving party is entitled to a judgment as a matter of law." F.R.C.P. 56(c). A genuine issue is raised if "there is evidence from which a reasonable trier of fact could find in favor of the nonmoving party, viewing the record as a whole in light of the evidentiary burden the law places on that party." *717 S. Woodward St.*, 2 F.3d at 532 (citing *Anderson v. Liberty Lobby, Inc.*, 477 U.S. 242, 252–56, 106 S.Ct. 2505, 2512–14, 91 L.Ed.2d 202 (1986)). If the movant makes a showing that there is no genuine issue of material fact, the nonmoving party cannot rest on its pleadings. Rather, it must come forward with facts showing that a genuine issue exists. *See* F.R.C.P. 56(e).

■■■■ A summary judgment motion in a forfeiture action is also evaluated in light of the procedural requirements of forfeiture law. *See 717 S. Woodward St.*, 2 F.3d at 533. Section 981 incorporates by reference a number of the customs laws applicable to seizures. *See* 18 U.S.C. § 981(d); 19 U.S.C. § 1602 et seq. Thus, in a forfeiture action, the Government must first make a showing of probable cause that the property at issue is forfeitable. "The burden then shifts to the claimant to prove by a preponderance of the evidence that the funds are not subject to forfeiture." *United States v. Dollar Bank Money Market Account No. 1591768456*, 980 F.2d 233, 237 (3d Cir.1992) (citing 19 U.S.C. § 1615 and *United States v. Wollman*, 945 F.2d 79, 81 (4th Cir.1991)). A claimant, then, is entitled to summary judgment if the Government fails to show probable cause or if the claimant shows the funds are not subject

to forfeiture. *See United States v. Four Parcels of Real Property*, 941 F.2d 1428, 1439 (11th Cir.1991) (en banc).

**B.** *Government's Showing of Probable Cause*

■■■■ In a forfeiture case, the Government's burden to establish probable cause is a modest one. " 'The determination of probable cause in a forfeiture proceeding simply involves the question whether the information relied on by the government is adequate and sufficiently reliable to warrant the belief by a reasonable person that' the property" is the proceeds of forfeitable conduct. *United States v. 6109 Grubb Rd.*, 886 F.2d 618, 621 (3d Cir.1989) (quoting *United States v. One 56–Foot Motor Yacht Named Tahuna*, 702 F.2d 1276, 1282 (9th Cir.1983)). The totality of the circumstances must be considered in making the determination. *See United States v. 92 Buena Vista Ave.*, 738 F.Supp. 854, 857 (D.N.J.1990) (citing *United States v. Rickus*, 737 F.2d 360, 367 (3d Cir.1984)), *aff'd in part*, 937 F.2d 98 (3d Cir.1991), *judgment aff'd*, —— U.S. ——, 113 S.Ct. 1126, 122 L.Ed.2d 469 (1993). Hearsay evidence can be relied upon to meet the Government's burden. *See 6109 Grubb Rd.*, 886 F.2d at 621.

In this case, the Government is proceeding upon a combination of two separate theories of forfeitability. One, ISC and its affiliated companies [4] are subject to forfeiture as "facilitating property." *See* Pl.'s Mem. in Opp'n to Mot. for Summ. J. at 1–2, 9 [hereinafter Pl.'s Mem. in Opp'n]; Pl.'s Supp. Response Mem. at 2, 4; Letter from Pl. to the Court of 6/24/1993, at 1–2. Two, because ISC was used to facilitate the commission of a crime or crimes in violation of 18 U.S.C. §§ 1956, 1957, and is thus forfeitable under 18 U.S.C. § 981(a)(1)(A), the monies received by Charles Ivy from the operations of the facilitating property (ISC) are "proceeds." Ergo, argues the Government, the defendant properties, which were purchased with "proceeds"

---

4. There is disagreement between the parties as to the exact definition of the entity that was involved in money laundering and paid Robert Ivy's salary. Though the claimants may be correct that the Government never specifically identifies "ISC Group Inc.," the title of the company

employing Ivy during the relevant periods, it is clear that the Government identified ISC and its related companies. It is uncontested that ISC Group Inc. is a component of the hydra-like family of corporations operating under the general sobriquet of "ISC."

from the facilitating property, are themselves "proceeds" subject to forfeiture. *See* Pl.'s Supp. Response Mem. at 3–4. The Court will analyze the applicability to this case of each premise of the Government's syllogism.

### 1. *Facilitating Property*

■ Though § 981 does not contain the phrase "facilitating property," it has been interpreted by various district courts to encompass such property through its use of the phrase "involved in." *See* 18 U.S.C. § 981(a)(1)(A); *United States v. Swank Corp.*, 797 F.Supp. 497, 500 (E.D.Va.1992); *United States v. Certain Accounts*, 795 F.Supp. 391, 396–97 (S.D.Fla.1992); *United States v. Certain Funds on Deposit*, 769 F.Supp. 80, 84 (E.D.N.Y.1991); *United States v. All Monies ($477,048.62) in Account No. 90–3617–3*, 754 F.Supp. 1467, 1472–73 (D.Haw.1991). As the court stated in *All Monies*, "[e]ven though § 981 does not expressly include the words 'facilitate' or 'facilitating,' the statute covers property 'involved in' illegal money laundering transactions. The legislative history makes it clear that 'property involved in' includes property used to facilitate money laundering offenses."[5] *All Monies*, 754 F.Supp. at 1473 (citation omitted). Such a reading of the statute is in accord with the conduct that § 981 seeks to deter, i.e., money laundering. The nature of money laundering is a mixture of "innocent" funds with "guilty" funds in an attempt to cover up the latter. *See Certain Accounts*, 795 F.Supp. at 397. Thus, the clean money serves as a tool to launder the ill-gotten money. There being no instruction by the Third Circuit on this issue, the Court is persuaded by the reasoning of its sister courts and holds that 18 U.S.C.

§ 981(a)(1)(A) authorizes the forfeiture of property that facilitates the commission of money laundering in violation of 18 U.S.C. §§ 1956, 1957.

■ Property facilitates the commission of a crime if its " 'use ... [makes the violation] less difficult and allow[s] it to remain more or less free from obstruction or hinderance.' " *United States v. One 1977 Lincoln Mark V. Coupe*, 643 F.2d 154, 157 (3d Cir.) (interpreting 21 U.S.C. § 881) (quoting *United States v. One 1950 Buick Sedan*, 231 F.2d 219, 222 (3d Cir.1956)), *cert. denied sub nom. Whitby v. United States*, 454 U.S. 818, 102 S.Ct. 97, 70 L.Ed.2d 88 (1981). This test has been adopted by the district courts that have ruled on facilitating property under § 981, *see, e.g., Certain Funds on Deposit*, 769 F.Supp. 80, 84; *Certain Accounts*, 795 F.Supp. at 396, as well as by the Third Circuit in deciding civil forfeiture cases under other statutes, *see, e.g., United States v. RD 1, Box 1*, 952 F.2d 53, 57 (3d Cir.1991) (examining 21 U.S.C.A. § 881(a)(7)). The Court adopts this formulation and will apply it to the instant case.[6]

### 2. *Proceeds of Facilitating Property*

■ The "proceeds" theory requires that the property sought to be forfeited be traced to property involved in one of the transactions delineated in § 981. *See* 18 U.S.C. § 981(a)(1)(A); *United States v. $448,342.85*, 969 F.2d 474, 476–77 (7th Cir. 1992). While the facilitating theory would allow forfeiture of "innocent" property serving as a cover for tainted property, the proceeds theory requires the Government to establish probable cause in regards to *specific* tainted property when there has been

---

5. The legislative history referred to by the court reads:

> [T]he term "property involved" is intended to include the money or other property being laundered (the corpus), any commissions or fees paid to the launderer, and any property used to facilitate the laundering offense.

134 Cong.Rec. S17365 (daily ed. Nov. 10, 1988) (Sen. Biden's analysis of the legislation amending § 981), *quoted in All Monies*, 754 F.Supp. at 1473.

6. Claimants have argued that the test for facilitating property is whether there is a "substantial connection" or "some nexus" between the property and the criminal activity. *See* Claimants' Supp.Mem. in Support of Mot. for Summ. J. ex. C at 1 [hereinafter Claimants' Supp.Mem.]. As the Third Circuit has indicated, however, "facilitation" would appear to incorporate the requirement that there be a "sufficient nexus" or "substantial connection" between the criminal activity and the facilitating property for the property to be forfeitable. *See RD 1, Box 1*, 952 F.2d at 57 & n. 5 (citing *United States v. 427 Chestnut St.*, 731 F.Supp. 183, 187 (E.D.Pa.1990), and *United States v. 2639 Meetinghouse Rd.*, 633 F.Supp. 979, 986 (E.D.Pa.1986)).

commingling with clean property. *See id.* at 476 (rejecting the contrary proposition); *Certain Accounts,* 795 F.Supp. at 398 (same); *see also 2639 Meetinghouse Rd.,* 633 F.Supp. at 988 (holding, in construing 21 U.S.C. § 881(a)(6), a similar proceeds forfeiture statute, that property "is forfeitable only to the extent that the property itself has a traceable connection to drug transactions.... If legitimate assets ... are commingled with drug proceeds, only the drug proceeds, whatever there form, are subject to forfeiture."). As the First Circuit has stated in construing a proceeds forfeiture action under the narcotics forfeiture statute, 21 U.S.C. § 881(a)(6):

> We do not believe, however, that forfeitability spreads like a disease from one infected mortgage payment to the entire interest in the property acquired prior to the payment. After all, only the actual proceeds of drug transactions are forfeitable. *Unless section 881(a)(6) deprives persons accused of dealing drugs of the right to own any property, the existence of an undivided interest in a felon's property which constitutes proceeds cannot mean that his entire property is proceeds.*

*United States v. Pole No. 3172,* 852 F.2d 636, 639–40 (1st Cir.1988) (emphasis added); *see United States v. One 1990 Porsche Carrera,* 807 F.Supp. 371, 373 (D.Md.1992) (citing *Pole No. 3172* in a forfeiture under § 981(a)(1)(C)).

 Though the Government is required to identify the proceeds that it seeks to forfeit, the tracing need not be to a particular incident of money laundering or wire fraud. Rather, " 'all that is required is that a court be able to look at the "aggregate" of the facts and find reasonable grounds to believe that the property probably was derived from [the malfeasance].' " *United States v. 92 Buena Vista Ave.,* 937 F.2d 98, 104 (3d Cir.1991) (interpreting 21 U.S.C. § 881(a)(6)) (quoting *United States v. Parcels of Land,* 903 F.2d 36, 38–39 (1st Cir.1990)), *judgment aff'd,* —— U.S. ——, 113 S.Ct. 1126,

122 L.Ed.2d 469 (1993). If, for example, the Government shows that probable cause exists to believe that the proceeds received by a claimant are greater than the value of the assets seized, it would be appropriate to shift the burden to the claimant to show other sources of legitimate income. *See United States v. $448,342.85,* 969 F.2d at 477.[7]

### 3. *Forfeiting Properties Acquired With the Proceeds of a Facilitating Property*

 The instant case is not one where the Government seeks the forfeiture of a business as a facilitating property. *See, e.g., United States v. South Side Fin., Inc.,* 755 F.Supp. 791, 797–98 (N.D.Ill.1991) (finding that the Government had established probable cause that an entire business had been used as facilitating property under 18 U.S.C. § 981(a)(1)(A)).[8] Nor is the Government seeking to forfeit the "actual proceeds," *Pole No. 3172,* 852 F.2d at 639, i.e., Ivy's salary from ISC. Rather, this is a case where the properties acquired with the proceeds of a facilitating business are sought to be forfeited. *See* Pl.'s Complaint ¶¶ 6, 11; Aff. of D.G. Herbert ¶ 13 at 3–4 (stating that Robert Ivy received approximately $796,000.00 in remuneration from ISC, the facilitating property, in the period between November 1986 and December 1989, and that these proceeds were used to acquire the defendant properties). Because it has not shown that the defendant properties facilitated the commission of money laundering, nor has it traced the proceeds of the money laundering corpus directly to the defendant properties, the Government must rely on a combination of the facilitation and the proceeds theories. Only by extending the reach of § 981 to properties acquired with the "proceeds" of a "facilitating property," i.e., Ivy's salary, can the Government reach the defendant properties. *See Certain Accounts,* 795 F.Supp. at 395–99 (discussing a similar application of § 981).

Though this reading of § 981 is expansive, the Court concludes, as a matter of statutory

---

7. For a discussion of the difficulties of tracing tainted proceeds in a commingled account, see *United States v. Banco Cafetero Panama,* 797 F.2d 1154, 1158–61 (2d Cir.1986).

8. In fact, the Government has apparently not sought forfeiture of *any* of ISC's corporate assets, which are now held by Ferranti, plc. *See* Claimants' Supp. Mem. at 8.

construction, that it is the correct one. In the first place, the plain language of the statute allows the forfeiture of "any property traceable" to property that is involved in a violation of the money laundering statutes. *See* 18 U.S.C. § 981(a)(1)(A); *see also Estate of Cowart v. Nicklos Drilling Co.*, —— U.S. ——, ——, 112 S.Ct. 2589, 2594, 120 L.Ed.2d 379 (1992) ("In a statutory construction case, the beginning point must be the language of the statute, and when a statute speaks with clarity to an issue judicial inquiry into the statute's meaning, in all but the most extraordinary circumstance, is finished.") (citing *Demarest v. Manspeaker*, 498 U.S. 184, 190, 111 S.Ct. 599, 603, 112 L.Ed.2d 608 (1991)). Allowing the forfeiture of the defendant properties is, therefore, entirely within the language of the statute. Secondly, the legislative history points to the need for a similarly broad reading of the statute. Because " 'the degree of sophistication and complexity in a laundering scheme is virtually infinite, and is limited only by the creative imagination and expertise of the criminal entrepreneurs who devise such schemes,' " S.Rep. No. 433, 99th Cong., 2d Sess. 2 (1986) (quoting Comm'n on Organized Crime, *The Cash Connection: Organized Crime, Financial Institutions, and Money Laundering* 8 (1984)), a narrowly tailored forfeiture statute could be easily evaded. Given the plain meaning of the statute, and viewed in light of the purpose for which it was enacted, the Court concludes that the statute authorizes the forfeiture of properties acquired with the proceeds of a facilitating property, provided the Government is able to trace the proceeds from the facilitating property to *each* defendant property.

This conclusion does not conflict with the court's holding in *United States v. Certain Accounts*. In *Certain Accounts*, the Government sought the forfeiture of thirty-one different bank accounts. *See* 795 F.Supp. at 393. Money orders were deposited into four of the accounts, the "direct accounts," in an attempt to launder funds. The remaining twenty-seven accounts, the "indirect accounts," received checks drawn on the direct accounts. *See id.* The court accepted the Government's argument that the direct accounts, which directly received the proceeds

of money laundering, could be forfeited in their entirety under a facilitation theory. *See Certain Accounts*, 795 F.Supp. at 395–97. However, when the Government attempted to extend this theory to the indirect accounts, the court drew the line, holding that the Government would have to show more than a "tracing of checks written against a suspect account." *See id.* at 398. The mere fact that tainted funds were deposited in an account did not give rise to a showing of probable cause as to the entire account. While the court did not reject the Government's theory, i.e., that the proceeds of facilitating property were forfeitable, it did require a showing of probable cause as to identified proceeds in each indirect account. *See id.* at 398–99.

▮ The defendant properties *sub judice* are akin to the indirect accounts in *Certain Accounts*. The Government in the instant case is entitled to the forfeiture of the defendant properties if it can establish by a showing of probable cause that the properties are the proceeds of property used to facilitate the violation of 18 U.S.C. §§ 1956 or 1957. In other words, the Government cannot establish probable cause as to the entirety of a defendant property merely by tracing proceeds to some part of a defendant property. *See Pole No. 3172*, 852 F.2d at 639–40; *Certain Accounts*, 795 F.Supp. at 398–99.

▮ Applying these principles to this case, the Court concludes that the Government has satisfied its burden of establishing that there is probable cause to believe that ISC is a facilitating property. *See Swank*, 797 F.Supp. at 502; *South Side Fin.*, 755 F.Supp. at 797–98. The affidavits filed by the Government in this case aver that various officers of ISC were involved in a long-running conspiracy to evade the U.S. arms embargo against the country of South Africa. *See* Pl.'s Complaint ex. 2. As part and parcel of the arms-running conspiracy, the officers engaged in money laundering and wire fraud. Special Agent O'Callaghan's affidavit establishes that ISC was involved in over $400 million worth of money laundering transactions in the period between November 1, 1986, and December 31, 1989. *See* Pl.'s Mem. in Opp'n ex. 1 at 1. The Court also

concludes that the Government has established that there is probable cause to believe that the monies paid to Robert Ivy in salary and bonuses are the proceeds of this facilitating property and thus are forfeitable.[9]

It is in the final link of the Government's argument, the one connecting Ivy's income to the defendant properties, where the case partially founders. Specifically, forfeiture of the properties acquired before October 27, 1986, is not available because, at the time the properties were acquired, the statutes upon which the Government relies to establish the predicate criminal activity had not yet been enacted. As to the properties acquired after October 27, 1986, the Government has established probable cause for forfeiture.

#### 4. *Pre–October 27, 1986 Properties*

A violation of either § 1956 or § 1957 of Title 18 of the U.S.Code is a necessary predicate to the invocation of § 981 for forfeiture of property.[10] *See* 18 U.S.C. § 981(a)(1)(A). These money laundering statutes were enacted and became effective on October 27, 1986. *See infra* note 11. Logically, the properties cannot be proceeds of property "involved in a transaction or attempted transaction in violation" of the money laundering statutes, 18 U.S.C. § 981(a)(1)(A), when the statutes were enacted *after* the properties had been acquired. Even if the statutes had been in effect prior to October of 1986, the Government's claim would still fail, since the Government has not established probable cause

to believe that "money laundering" occurred prior to November of 1986.

#### a. *The money laundering statutes were not in effect before October 27, 1986*

▬▬▬ Though the conduct loosely described as "money laundering" was prohibited by a melange of statutes pre–1986, *see* G. Richard Strafer, *Money Laundering: The Crime of the '90's*, 27 Am.Crim.L.Rev. 149, 150 (1989) (stating that most "money laundering" prosecutions before the enactment of the statutes were a combination of charges under titles 18, 21, and 31 of the U.S.Code), the specific statutes criminalizing money laundering, and upon which the Government relies for the instant forfeiture, 18 U.S.C. §§ 1956 and 1957, were enacted by the Money Laundering Control Act of 1986, Pub.L. No. 99–570, §§ 1351–1367, 100 Stat. 3207, 3207–18 to –39 (1986), with the statutes becoming effective on the date of enactment, October 27, 1986.[11] What has been codified as 18 U.S.C. § 981, the forfeiture statute under which this claim is made, was also enacted by this Act.

Section 981 does *not* state that property involved in the crime of "money laundering" is forfeitable. Instead, § 981 authorizes the forfeiture of property involved in violations of § 1956 or § 1957. *See United States v. Certain Funds*, 998 F.2d 129, 133 (2d Cir.1993) (stating that "if [the claimant] did not violate § 1956, then the government's forfeiture claim under 18 U.S.C. § 981(a)(1)(A) must necessarily fail"). Notwithstanding the as-

---

**9.** The affidavit of Special Agent Herbert establishes that Robert Ivy received approximately $796,000 in remuneration from ISC during the same period. *See* Pl.'s Complaint ex. 2 at 3; *see also* Aff. of R.C. Ivy ex. J at 3–6 (reproducing R.C. Ivy's W–2 forms for his work at ISC from the years 1986 through 1989).

The Government is correct in its assertion that the wrongdoing upon which the forfeiture is sought need not be the same wrongdoing with which the owner is charged. The property itself is the wrongdoer, and is thus forfeitable. *See U.S. v. $38,570 U.S. Currency*, 950 F.2d 1108, 1113 (5th Cir.1992).

**10.** The forfeiture claim based on wire fraud is discussed *infra*.

**11.** Unless it is expressly provided by the legislative body to be otherwise, a statute is effective

upon enactment. *See United States v. King*, 948 F.2d 1227, 1228 (11th Cir.1991) (per curiam), *cert. denied*, —— U.S. ——, 112 S.Ct. 1701, 118 L.Ed.2d 411 (1992); *Hays & Co. v. Merrill Lynch, Pierce, Fenner & Smith, Inc.*, 885 F.2d 1149, 1151 n. 1 (3d Cir.1989). The Money Laundering Control Act of 1986 did not provide an effective date for the statutes at issue. *Cf.* Money Laundering Control Act of 1986, § 1364, 100 Stat. at 3207–34 (providing effective dates for other provisions of the Act, but not for §§ 981, 1956, and 1957). In the face of this silence, the Court concludes that the money laundering statutes at issue became effective on October 27, 1986, the date of their enactment. *See also United States v. Isabel*, 945 F.2d 1193, 1201 n. 14 (1st Cir.1991) (suggesting, in dicta, that October 27, 1986, was the effective date of § 1956); *cf. Pearlstine Distributors, Inc. v. Freixenet USA, Inc.*, 678 F.Supp. 133, 136 (D.S.C.1988) (holding that § 1956 "became effective on October 26, 1986").

1157

sertions made by the Government in its filings and at the hearing of February 2, 1993,[12] any activities before October 27, 1986, the statutes' effective date, cannot, by definition, be money laundering in violation of 18 U.S.C. § 1956 or § 1957.[13]

 The claimants' uncontradicted affidavits, in conjunction with the exhibits attached thereto, establish that the following assets were acquired *before* the effective date of the money laundering statutes:

- Shares in Balcor Pension Investments IV, acquired on August 30, 1985. *See*

12. At the hearing, the Assistant U.S. Attorney, Pamela Foa, engaged in the following colloquy with the Court:

COURT: [E]ven assuming all the criminal activity can be shown, if [Mr. Ivy] owned the property before the criminal activity began, isn't that ... an absolute defense?

FOA: Absolutely[,] but the criminal activity ... which is the basis of the forfeiture need not be Mr. Ivy's criminal activity.... [I]t only need be criminal activity and that criminal activity as is clearly set forth in the indictment and incorporated into the complaint, began in the late 70s and continued through 1989 at least.... ISC ... [was] engaged in criminal conduct for a decade, as is described in the indictment, and ... they were engaged in conduct to promote, facilitate, conceal the activities in violation of 1956 and 1957....

Tr. of Hrg. at 31–32.

13. The Government concedes as much when they state that "[s]alary from ISC to [Robert] Ivy *after* ISC's earliest activity in violation of 18 U.S.C. § 1956 or § 1957 flows from the forfeitable business and is, therefore[,] forfeitable, as are any and all properties acquired with that salary." Pl.'s Mem. in Opp'n at 8 (emphasis added).

Though ISC and its employees may have engaged in misconduct during the period between the late 70s and November 1, 1989, these activities were not in violation of either § 1956 or § 1957. Retroactive application of the money laundering statute would likely have ex post facto implications, *see generally Collins v. Youngblood*, 497 U.S. 37, 41–44, 110 S.Ct. 2715, 2718–20, 111 L.Ed.2d 30 (1990) (discussing the ex post facto clause), since §§ 1956 and 1957 criminalized the activity of "money laundering" for the first time, *see United States v. Awan*, 966 F.2d 1415, 1423 (11th Cir.1992); *United States v. Stavroulakis*, 952 F.2d 686, 691 (2d Cir.) ("Section 1956 creates the crime of money laundering ... The statute was designed to create a new federal crime, rather than to further penalize the underlying criminal conduct.") (citing S.Rep. No. 433, 99th Cong., 2d Sess. 1–2 (1986) and H.R.Rep. No. 855, 99th Cong., 2d Sess. 7 (1986)), *cert.*

Aff. of R.C. Ivy ¶ 3 at 7–8, ex. F–1 to –2; Aff. of I. Ivy ¶ 4 at 7.

- That portion of the shares in District Associates of Washington, L.P., acquired between the dates of July 16, 1984, and June 1, 1986. Per the record, this amounts to just over 54% of the shares ($32,473.00 of a total investment of $59,-750.00). *See* Aff. of R.C. Ivy ¶ 3 at 8, ex. G–1 to –2; Aff. of I. Ivy ¶ 4 at 7.

- All shares in Gabelli Equity Trust, Inc., including those originally acquired on August 14, 1986, and those that accrued through reinvestment of dividends.[14]

*denied,* —— U.S. ——, 112 S.Ct. 1982, 118 L.Ed.2d 580 (1992); *United States v. Shearson Lehman Bros., Inc.*, 650 F.Supp. 490, 492 & n. 1 (E.D.Pa.1986) (stating that the money laundering statutes did not apply to conduct occurring before the statutes' effective date); *cf. United States v. Dela Espriella*, 781 F.2d 1432, 1436 (9th Cir. 1986) ("[M]oney laundering itself is not a crime, and the mere fact that a person launders monies derived from narcotics activities does not make the launderer part of a conspiracy to violate the narcotics laws.") (pre–Money Laundering Control Act case). Though a person could possibly be charged with a conspiracy to violate the money laundering statutes when overt acts straddle the effective date of the statutes, *see, e.g., United States v. Rosa*, 891 F.2d 1063, 1068–69 (3d Cir. 1989); *United States v. Goldberger*, 197 F.2d 330, 331 (3d Cir.) (per curiam), *cert. denied*, 344 U.S. 833, 73 S.Ct. 40, 97 L.Ed. 648 (1952), there is no basis for charging the person with money laundering for acts committed before the effective date. The Government apparently realizes this since the earliest date upon which a count for money laundering is based is December 29, 1986, *see* Complaint for Forfeiture ex. 1 at 58, and the affidavit of Special Agent O'Callaghan attesting to ISC's money laundering activities specifically addresses the period *after* November 1, 1986, *see* Pl.'s Mem. in Opp'n ex. 1 at 1.

14. The accrued shares include 13 currently held in the Ivys' frozen safety deposit box, *see* Aff. of R.C. Ivy ¶ 3 at 9; Aff. of I. Ivy ¶ 4 at 8, and, as of September 30, 1991, approximately 536 held in account number 281573 at Gabelli Equity Trust, Inc.; *see* Aff. of R.C. Ivy ¶ 3 at 9, ex. H–4. Any shares that have accrued due to reinvestment of dividends since September 30, 1991, would also be considered part of the August 1986 investment for the purpose of determining the acquisition date.

The Government's protestation that the Ivys' interest in the Gabelli shares was not "perfected" until they took delivery in March of 1987 is without merit. *See* Pl.'s Mem. in Opp'n at 11. A party's ownership interest in a given property is

*See* Aff. of R.C. Ivy ¶ 3 at 8–9, ex. H–1 to –4; Aff. of I. Ivy ¶ 4 at 7.

The Court finds that the Government's claim that "[t]he record shows ... that all the seized defendants were acquired by Claimants after November 1, 1986," is incorrect. *See* Pl.'s Mem. in Opp'n. at 11. Accordingly, summary judgment in favor of the claimants is granted as to these defendant properties.

b. *The Government has failed to show that ISC was engaged in money laundering before October 27, 1986*

■ In the alternative, even if the properties acquired pre-October 27, 1986, were determined by the applicable state law. *See 717 S. Woodward St.,* 2 F.3d at 535; *United States v. One 1973 Rolls Royce,* 817 F.Supp. 571, 577 & n. 14 (E.D.Pa.1993) (citing *United States v. 1500 Lincoln Ave.,* 949 F.2d 73, 77 (3d Cir.1991)). In Pennsylvania, a purchaser of securities becomes the owner of such securities when they are delivered to her broker and held on her behalf. *See* 13 Pa.Cons.Stat.Ann. § 8313(a)–(b) (1984); *Wagner v. Hart Chem. Co.,* 409 Pa.Super. 289, 597 A.2d 1208, 1213–12 & n. 12 (1991), *appeal denied,* 617 A.2d 1275 (Pa.1992). This is the situation established by the claimants' affidavits and exhibits. The Gabelli shares were purchased and held by the claimants' broker, *see* Aff. of R.C. Ivy ex. H–1 (photocopy of purchase confirmation from Shearson Lehman Brothers marked "HOLD SECURITIES"), and were later physically transferred to the claimants, *see id.* ex. H–2.

15. The Government's reply to the claimants' motion for summary judgment contained the sworn affidavit of Special Agent Gerard O'Callaghan of the Federal Bureau of Investigation as well as a number of plea memorandums and agreements concerning other defendants in the *ARMSCOR* indictment. *See* Pl.'s Mem. in Opp'n Exs. 1 & 2. The claimants have objected to the submission of these items, arguing: (1) that they are untimely, (2) that the plea memoranda and the exhibit to O'Callaghan's affidavit are not properly identified, authenticated, or sworn, (3) that they contain hearsay, (4) that they are irrelevant, and (5) that the exhibit to the affidavit is unintelligible. Claimants' Supp.Mem. at 6–7 n. 9. These arguments are without merit. This Court extended the Government's time to answer the summary judgment motion at the hearing held on February 2, 1993, and the submission of the answer with accompanying affidavits was within that deadline. *See* Tr. of Hrg. at 39; F.R.C.P. 6(d). The exhibit to Agent O'Callaghan's affidavit is sworn pursuant to the affidavit, and review of the copy that is in the Court's files shows that it is intelligible. Although the only facts purportedly established by the plea memoranda are those already contained in the indictment incorporated

within the reach of § 981, the Government has failed to show probable cause that money laundering occurred before that date.

The complaint states that "[f]or over a decade, ending in about 1989, ISC was engaged in violations of the criminal laws of the United States." Pl.'s Complaint ¶ 5. This conclusory statement is supported by reference to the *ARMSCOR* indictment attached as an exhibit to the complaint. However, the factual averments contained in the indictment, including the affidavit of Special Agent Herbert,[15] is insufficient to show that there is a genuine issue of material fact as to whether into the complaint, they will be admitted as amendments to the pleadings. To the extent any of the facts in the items are hearsay, they are admissible to establish probable cause. *See 6109 Grubb Rd.,* 886 F.2d at 621.

By letter of August 6, 1993, the Government also introduced a second affidavit sworn by Agent Herbert. *See* Letter from Pl. to the Court of 8/6/1993, at 4. The submission of this affidavit was also contested by the claimants. *See* Claimants' Supp.Mem. (Second) at 6 n. 4. Claimants argue that the submission is untimely. The point is well-taken. The Government made no motion to allow this late supplementation of the record. *See* F.R.C.P. 6(b). Though the Court could treat the filing of the affidavit as a motion for leave to supplement the record, *see, e.g., Lujan v. National Wildlife Federation,* 497 U.S. 871, 894–98, 110 S.Ct. 3177, 3192–93, 111 L.Ed.2d 695 (1990), the Government has not shown any cause why the extension should be granted, nor has it shown any excusable neglect. The affidavit was seemingly filed in an attempt to persuade the Court that the Third Circuit's recent opinion in *United States v. Paramo,* 998 F.2d 1212 (3d Cir.1993), is somehow applicable to the case *sub judice. See* Letter from Pl. to the Court of 8/6/1993, at 1–3. Therefore, the Court will not receive the second affidavit of Agent Herbert into evidence.

The Court, however, will consider the supplemental affidavit filed by claimant Robert Ivy concurrent with his supplemental memorandum. The Court allowed the claimants 15 days after the filing of the Government's answer to the motion for summary judgment in which to reply. *See* Tr. of Hrg. at 39. Even if the deadline was not met strictly, the Court will consider it to avoid unfair prejudice to the claimants, given the Government's extended delay in responding to the motion for summary judgment. In any event, the Government failed to object to the submission of the affidavit. *See* 4A Charles A. Wright & Arthur R. Miller, *Federal Practice and Procedure: Civil* § 1170 at 513 (2d ed.1987) (citing *Schy v. Susquehanna Corp.,* 419 F.2d 1112

acts of money laundering occurred before November 1986. The only references to pre–1986 money laundering are the conclusory statements contained in paragraphs 57 and 58 of Count One of the Indictment, the first of two conspiracy counts, which state:

57. It was a further part of the conspiracy that in order to collect the proceeds from the illegal shipment of munitions, technology and other commodities to defendant ARMSCOR, defendants would and did launder money derived from illegal exports to promote the scheme and to disguise in whole or part the nature, source and control of such money. Payments for the illegal shipments were accomplished at times through a series of international and domestic wire transfers, through the bank accounts of various front companies and entities controlled by the defendants and other co-conspirators known to the Grand Jury and through Swiss bank accounts. After the money was laundered, the ISC defendants, in turn, would and did cause payments to domestic vendors to be made by wire transfer or check from the proceeds of the illegal exports.

58. It was further a part of the conspiracy that the defendants would and did engage in numerous monetary transactions in interstate and foreign commerce in such criminally derived property having a value greater than $10,000, and that was derived from the illegal export and import of munitions, technology and other United States origin commodities.

Complaint ex. 1 at 18–19. However, a close reading of the overt acts listed on pages twenty-seven to forty-five of the Indictment finds no pre-November 1986 transfer of funds that can support the allegation that the company was engaged in money laundering during that time. The affidavit of Special Agent Herbert, attached as Exhibit 2 to the Complaint, adds nothing concerning the acts of money laundering that allegedly transpired before November 1986. The Assistant U.S. Attorney's naked assertion at the February 1993 hearing that money laundering had been continuously carried out at ISC since the late seventies is not sufficient to intimate that such activity took place pre-

November 1986. *See supra* note 12. Thus, based on the current record, even if §§ 1956 and 1957 could supply the predicate acts to reach properties acquired before October 27, 1986, the Government's attempt to forfeit properties acquired before that date fails on its proof.

### 5. *Post–October 27, 1986 Properties*

█ As to the remaining properties, i.e., those acquired *after* October 27, 1986, the Government has successfully met its burden of establishing probable cause. The allegations concerning ISC are made with factual support and with specificity. *See supra* pages 1155–1156 and n. 9. The amount of money Robert Ivy derived from ISC in salary and bonuses is large enough that the inference that the defendant properties were acquired with these monies, i.e., proceeds of the facilitating property, shifts the burden of proof to the claimants. *See United States v. $448,342.85,* 969 F.2d at 477 ("Probable cause to believe that the proceeds of the fraud exceed the balance of the account at the time of seizure justifies calling on the claimant to identify sums derived from lawful activities."); *cf. United States v. Thomas,* 913 F.2d 1111, 1114 (4th Cir.1990) (applying the so-called "net worth" test in a forfeiture under 21 U.S.C. § 881(a)(6)).

The claim by Irene Ivy that some of the defendant properties were acquired with funds other than those earned by Robert Ivy is insufficient to rebut the Government's showing of probable cause. *See* Aff. of I. Ivy ¶ 2(d)(4)–(6). Her affidavit states that a "substantial portion" of the funds in the seized bank accounts came from personal loans, a settlement of a personal injury claim, consulting fees earned by Robert Ivy, retirement pension checks, and the sale of previously acquired investment stocks. *See id.* ¶ 2(d)(4). Drawing all justifiable inferences in the Government's favor, *see Anderson,* 477 U.S. at 255, 106 S.Ct. at 2513 (citing *Adickes v. S.H. Kress & Co.,* 398 U.S. 144, 158–59, 90 S.Ct. 1598, 1608–10, 26 L.Ed.2d 142 (1970)), it is not clear what portion, if any, of the balances in the accounts can be attributed to non-ISC-derived income. For example, as the Government points out, if the investment

(7th Cir.), *cert. denied,* 400 U.S. 826, 91 S.Ct. 51, 27 L.Ed.2d 55 (1970)).

stocks were purchased with money received from ISC, they too might be subject to forfeiture. *See* Pl.'s Mem. in Opp'n at 11. Since the claimants must meet the burden they would carry at trial, i.e., proof by a preponderance of the evidence, *see supra* page 1152, the general averment that a "substantial portion" of the seized bank accounts was the proceeds of lawful activity does not rebut the Government's showing of probable cause.

Thus, the Government has established probable cause for the seizure of the assets listed in the Appendix to this Memorandum, excepting the Gabelli and Balcor shares, and a portion of the shares in District Associates of Washington, L.P., as described above. *See* Appendix *infra; supra* page 1157.

### C. *The Innocent Owner Defense*

The full impact of the application of § 981 is mitigated by two of its provisions. Section 981(d) allows for remission, the release by the Attorney General of property seized in a forfeiture action. *See* 19 U.S.C. § 1618 (authorizing remission; incorporated into § 981(d) by reference); 28 C.F.R. § 9.5 (outlining the criteria governing remission). Irene Ivy has applied for a remission, but as of the time of the summary judgment motion, had not received a reply. *See* Aff. of I. Ivy ¶ 6, ex. A at 1–7.

The other mitigating provision is the innocent owner defense. The provision reads:

> No property shall be forfeited under this section to the extent of the interest of an owner or lienholder by reason of any act or omission established by that owner or lienholder to have been committed without the knowledge of that owner or lienholder.

18 U.S.C. § 981(a)(2). The inclusion of this provision highlights the fact that an "in rem" proceeding does have the effect of imposing punishment on an owner, notwithstanding the legal fiction that it is the wrongdoing property that is being punished. *See Austin*

*v. United States,* ⸺ U.S. ⸺, ⸺, 113 S.Ct. 2801, 2808–10 & n. 9, 125 L.Ed.2d 488 (1993). The innocent owner subsection "insures that no owner who does not act affirmatively, or by omission, to violate [one of the enumerated] provisions will be subject to forfeiture." S.Rep. No. 433, at 23 (commenting on the Senate bill that was the precursor of the Money Laundering Control Act of 1986).

■ In discussing the innocent owner defense under 21 U.S.C. § 881(a)(7), a forfeiture provision similar to § 981, the Third Circuit has expressed that, in order to establish this defense, a claimant "must prove by a preponderance of the evidence that the activity giving rise to forfeiture occurred ... without the claimant's knowledge." *717 S. Woodward St.,* 2 F.3d at 533 (citing *6109 Grubb Rd.,* 886 F.2d at 626).[16] This Court finds that this is the appropriate standard to apply in evaluating the defense under § 981(a)(2) as well. *Accord Dollar Bank Money Market Account,* 980 F.2d at 237; *United States v. 105,800 Shares of Common Stock of FirstRock Bancorp. Inc.,* 830 F.Supp. 1101, 1130–31 (N.D.Ill.1993); *United States v. $705,270.00,* 820 F.Supp. 1398, 1402 (S.D.Fla.1993); *United States v. 1501 W. Boulevard,* 814 F.Supp. 468, 472 (W.D.N.C. 1993); *All Monies,* 754 F.Supp. at 1476.

■ Irene Ivy, then, must show, by a preponderance of the evidence, that she is an "owner" of the defendant properties, and that she is without knowledge as to the activities that gave rise to the forfeiture. As to the first element, state law controls the question of whether a person is an owner or not. *See 717 S. Woodward St.,* 2 F.3d at 535; *United States v. One 1973 Rolls Royce,* 817 F.Supp. 571, 577 & n. 14 (E.D.Pa.1993) (citing *United States v. 1500 Lincoln Ave.,* 949 F.2d 73, 77 (3d Cir.1991)). To establish the second element, lack of knowledge, she must establish that she was unaware of the illegal

**16.** The court in *717 S. Woodward Street* also cited lack of consent as a possible defense. *See id.* at 533. This option is inapplicable in a proceeding under § 981, since it does not contain the "lack of consent" provision. *Compare* 18 U.S.C. § 981(a)(2) *with* 21 U.S.C. § 881(a)(7); *see also*

*United States v. $705,270.00,* 820 F.Supp. 1398, 1402 (S.D.Fla.1993) ("Because § 981(a)(2) does not include a consent element in its innocent owner provision, a claimant in a forfeiture action under 18 U.S.C. § 981(a) is not required to show

transactions that gave rise to the forfeitable properties. *See 105,800 Shares,* 830 F.Supp. at 1130–31; *United States v. 316 Units of Municipal Securities,* 725 F.Supp. 172, 180 (S.D.N.Y.1989).

■ The affidavits filed by the claimants and the Government in support of their respective positions are in sharp contrast. On the issue of ownership, Irene Ivy states that she is the sole owner of the 1989 Lincoln Continental, *see* Aff. of I. Ivy ¶ 1, and that she is the joint owner of the 1986 Lincoln Continental, the frozen bank accounts, and the securities in the frozen safe deposit box.[17] On the issue of lack of knowledge, the Ivys aver that Mrs. Ivy was a homemaker for thirty-four years who knew nothing about the illegal activities that are alleged to have taken place at ISC, *see* Aff. of I. Ivy ¶ 3; Aff. of R.C. Ivy ¶ 2, that she had no access to any business records, and that Mr. Ivy never discussed with her the activities alleged by the Government in its indictment. *See* Aff. of R.C. Ivy ¶ 2. In any event, Mrs. Ivy has not been charged with any crime in the *ARMSCOR* indictment. *See* Tr. of Hrg. at .37 (statement of Ms. Foa, Assistant United States Attorney).

By contrast, the Government counters that Irene Ivy *did* have knowledge of wrongdoing. Specifically, the Government points to the receipt of certain gyroscopes at the Ivy residence, which were later shipped to South Africa, in violation of the Arms Export Control Act, as permitting the inference that Irene Ivy knew of the wrongdoing at ISC. *See* Pl.'s Mem. in Opp'n at 12, ex. 1 at 2. Thus, the Government contends, summary judgment is inappropriate since the alleged use of the family residence to facilitate illegal exports gives rise to a factual issue.

The Government's argument has merit. Drawing all reasonable inferences in the Government's favors as a nonmovant, there is a genuine dispute as to a material issue of fact. While the Government claims that Mrs. Ivy knew all about ISC's activities, Mrs. Ivy retorts that she knew nothing. The Court is thus left in the position of evaluating the credibility of the parties on the basis of their affidavits. The Third Circuit, in examining a claim of innocence under similar circumstances, has concluded that summary judgment is not appropriate when there is an issue of credibility. *See 717 S. Woodward St.,* 2 F.3d at 533 ("When the state of mind of a person is at issue and the record contains direct evidence of that state of mind in the form of that person's sworn statement, conflicting circumstantial evidence normally creates only an issue of credibility for trial and summary judgment is inappropriate."); *see also Country Floors, Inc. v. Partnership of Gepner & Ford,* 930 F.2d 1056, 1062 (3d Cir.1991) (stating that "credibility evaluations are inappropriate in deciding a motion for summary judgment"). Because there is a genuine issue of material fact that turns on credibility, the motion for summary judgment as to the remaining defendant properties on the basis of the innocent owner defense will be denied.[18]

### D. *Forfeiture of the Proceeds of Wire Fraud*

■ An alternative ground for forfeiture under § 981 is the commission of wire fraud, in violation of 18 U.S.C. § 1343, that affects a financial institution. *See* 18 U.S.C. § 981(a)(1)(C). In contrast with § 981(a)(1)(A), which allows the forfeiture of property that facilitates money laundering, § 981(a)(1)(C) only authorizes the forfeiture of "property ... which constitutes or is derived from proceeds traceable to a violation of ... [18 U.S.C.] 1343 ... affecting a financial institution." *Id.* Thus, the Government's argument that ISC is forfeitable as facilitating property, based as it is on

---

he took all reasonable efforts to prevent the illegal use of his property.").

**17.** The safe deposit box contained Gabelli Equity Trust shares, Quest for Value Dual Purpose Fund shares, Ferranti, plc., shares, and one U.S. Government Savings Bond in the face amount of $500. *See* Aff. of I. Ivy ¶ 2(d)(3). The U.S. Government Savings Bond seems to belong to

neither of the Ivys, but rather to their grandson. *See* Aff. of I. Ivy ¶ 2(d)(3) (averring that the bond is owned by the Ivys' grandson, Jeffery Ivy).

**18.** Since the dispute over whether or not Mrs. Ivy had knowledge of ISC's activities is dispositive, the Court need not reach the issue of the validity of her claim to an ownership interest in the defendant properties.

§ 981(a)(1)(A), is wholly inapplicable in the context of wire fraud. There must be a tracing of proceeds from acts of wire fraud to the defendant properties.

Since the filing of the complaint, however, the Government has failed to press any argument based on the theory that the defendant properties are the proceeds of wire fraud. *See, e.g.,* Letter from Pl. to the Court of 8/6/1993, at 1–3 ("The forfeiture action against the defendant properties ... arises from violations of 18 U.S.C. § 1956 and § 1957."). Since the Government appears to have abandoned its claim under § 981(a)(1)(C), the Court will grant summary judgment in the claimants' favor on the forfeiture under § 981(a)(1)(C). *See Celotex Corp. v. Catrett,* 477 U.S. 317, 324, 106 S.Ct. 2548, 2553, 91 L.Ed.2d 265 (1986) (stating that a nonmoving party must go beyond its pleadings when contesting a summary judgment motion).

### E. *The Ex Post Facto Claim*

 Finally, the Ivys briefly argue that the application of § 981 to the defendant properties would be violative of the ex post facto clause. They claim that §§ 1956 and 1957 were not predicate violations under § 981 until November 18, 1988, the date when the amendment bringing those statutes within the scope of § 981 became effective. *See* Claimants' Mem. in Support of Summ. J. at 19 (citing Pub.L. 100–690, § 6463(a)(1) (1988)). Since the last of the money laundering violations enumerated in the Government's complaint occurred on May 31, 1988, *see* Pl.'s Complaint ex. 1 at 58, the Ivys contend that application of the amended forfeiture statute, on the basis of violations occurring before the amendment's effective date, violates the ex post facto clause.

**19.** Whether the 1988 amendments to § 981 should be given retroactive effect is an issue of statutory construction that has not been properly presented to this Court by either party. *See*

Claimants' position is incorrect. A perusal of the 1986 public law that enacted § 981 shows that the section did apply to the "gross receipts," i.e., the money launderer's profits, obtained as a result of a violation of 18 U.S.C. § 1956 or § 1957. *See* Money Laundering Control Act of 1986, § 1366, 100 Stat. at 3207–35. The 1988 amendments merely broadened the scope of the section's remedy, allowing the forfeiture of the money laundering corpus and any facilitating property, as well as a money launderer's profits.[19] *See supra* note 5 (quoting the comments entered into the Congressional Record by Sen. Biden when the 1988 amendments to § 981 were passed).

 More fundamentally, whether the ex post facto clause even applies to this forfeiture statute is questionable. Chief Judge Cahn of this Court has held that § 981(a)(1)(C) is not a criminal statute and therefore is not subject to the strictures of the ex post facto clause. *See United States v. All Monies in Account # 42032964,* Civ. A. No. 92–1996, 1992 WL 301257, at *2–*3 (E.D.Pa. Oct. 14, 1992). Claimants' ex post facto argument as to § 981(a)(1)(A) is indistinguishable, and must likewise fail.

### III. CONCLUSION

The Government has failed to establish probable cause as to certain of the defendant properties, and they shall be released forthwith. As to the remaining properties, probable cause does exist for their forfeiture under 18 U.S.C. § 981(a)(1)(A). Any claims under 18 U.S.C. § 981(a)(1)(C) are dismissed. The existence of a genuine issue of material fact as to Mrs. Ivy's lack of knowledge precludes the granting of summary judgment in her favor on the innocent owner defense. Application of the forfeiture statute to the properties seized is not violative of the ex post facto clause.

*United States v. All Monies in Account # 42032964,* Civ. A. No. 92–1996, 1992 WL 301257, at *2 n. 3 (E.D.Pa. Oct. 14, 1992).

## APPENDIX

| Asset | Date Acquired |
|---|---|
| 1989 Lincoln Continental | — |
| 1986 Lincoln Continental [20] | — |
| One U.S. Gov't Savings Bond | — |
| Shares of Ferranti, plc. | — |
| Shares in Balcor Pension Investments IV | Aug. 30, 1985 |
| Shares in District Assocs. of Wash., L.P.[21] | July 26, 1984 |
| Shares in Gabelli Equity Trust [22] | Aug. 14, 1986 |
| Shares in Quest for Value Dual Purpose Fund | Feb. 23, 1987 |
| Money Market Account Number 550–80011 [23] | — |
| Checking Account Number 552–983370 | — |

### AMENDED ORDER

AND NOW, this 21st day of October, 1993, it is **ORDERED** that:

1. The claimants' Motion for Summary Judgment (Doc. No. 32) is **GRANTED IN PART.** The following defendant properties shall be released:

(1) Shares in Balcor Pension Investments IV, acquired on August 30, 1985.

(2) That portion of the shares in District Associates of Washington, L.P., acquired between the dates of July 16, 1984, and June 1, 1986, amounting to just over 54% of the shares ($32,473.00 of a total investment of $59,750.00).

(3) All shares in Gabelli Equity Trust, Inc., including those originally acquired on August 14, 1986, and those that accrued through reinvestment of dividends.

2. The remainder of the claimants' Motion for Summary Judgment is **DENIED.**

3. The claimants' Motion for Sanctions (Doc. No. 51) is **DENIED WITHOUT PREJUDICE.** The motion may be renewed at the close of the proceedings.

4. The Government's Motion to Stay Proceedings (Doc. No. 39) is **DENIED WITHOUT PREJUDICE.**

5. The Government's Motions to Extend Time to Respond to the Motion for Summary Judgment (Doc. No. 40) is **DENIED AS MOOT.**

6. The Government's Motion to Extend Time to Respond to the Motion for Sanctions (Doc. No. 54) is **DENIED AS MOOT.**

AND IT IS SO ORDERED.

---

20. The Government also sought forfeiture of a 1986 Mazda 323 and a 1985 Mazda RX–7. The complaint was dismissed as to the 1985 Mazda RX–7 based on the affidavit of Mary Ivy, daughter of Robert and Irene, stating that she and she alone owned the automobile. *See* Order of Dec. 3, 1992. Ms. Ivy also averred that the 1983 Mazda was no longer owned by her or her parents. No claim has been filed as to the 1983 Mazda and the warrant on it was never executed.

21. A downpayment of $6,766 was made on this date. Additional payments on a promissory note for $52,984.00 were apparently made on February 15, 1985, June 1, 1986, June 1, 1987, June 1, 1988, and June 1, 1989, in the following amounts: $13,050; $12,657; $10,441; $9,141; and $7,695. *See* Aff. of R.C. Ivy ¶3(b), ex. G.

22. The 1000 shares originally acquired have increased in number through the mutual fund's reinvestment plan. As of September 30, 1992, the total number of shares held by the Ivys' had increased to a fraction over 1549, 1013 of which are held in the frozen safety deposit box, the remainder in account number 281573 at Gabelli Equity Trust. *See* Aff. of R.C. Ivy ¶3 at 8–9, ex. H–1 to –4.

23. The two accounts are at Mellon Bank, formerly Commonwealth National Bank. *See* Aff. of R.C. Ivy ¶1(e).