**UNITED STATES of America, Plaintiff,**

v.

**ELEVEN VEHICLES, et al., Defendants.**

**Civ. A. No. 91–6779.**

United States District Court,
E.D. Pennsylvania.

Sept. 5, 1995.

---

Pamela Foa, Assistant U.S. Attorney, Michael M. Baylson, Sonia C. Jaipaul, U.S. Attorney's Office, Philadelphia, PA, for U.S.

Charles H. Ivy, Scoggins, Ivy & Goodman, P.C., Atlanta, GA, for Robert Clyde Ivy, Irene Ivy.

Robert Clyde Ivy, Lancaster, PA, pro se.

Wayne K. Radcliffe, Lancaster, PA, pro se.

Marilyn J. Gelb, Philadelphia, PA, for Wayne K. Radcliffe.

Bruce A. Franzel, Philadelphia, PA, for Terrance P. Faulds.

Terrance P. Faulds, Holtwood, PA, pro se.

Irene Ivy, Lancaster, PA, pro se.

Fred D. Furman, Kleinbard, Bell & Brecker, Philadelphia, PA, for Kleinbard, Bell & Brecker.

James H. Foster, Mellon Bank, N.A., Harrisburg, PA, for Mellon Bank, N.A.

John H. Whitmoyer, Henry & Beaver, Lebanon, PA, for Lebanon Valley National Bank.

Mark E. Cedrone, Carroll & Cedrone, Philadelphia, PA, for Gerald Schuler.

Elaine K. Radcliffe, Lancaster, PA, pro se.

Michelle E. Radcliffe, Lancaster, PA, pro se.

**MEMORANDUM**

EDUARDO C. ROBRENO, District Judge.

This case involves the forfeiture of personal property belonging to claimants Robert and Irene Ivy, husband and wife, as a result of claimant Robert Ivy's involvement with alleged money laundering activities. On November 18, 1988, Congress broadened the sweep of the federal money laundering statutes, permitting the civil forfeiture not only of "gross receipts" of money laundering activities but also of property "involved in" money laundering. Claimants have moved for summary judgment, asserting that forfeiture can only be effected by the impermissible retroactive application of the 1988 amendments. For the reasons that follow, the Court concludes that the 1988 amendments may not be applied retroactively to forfeit property acquired before their enactment, and therefore, all properties acquired by the claimants before November 1988 shall be released to claimants. However, because there is a genuine issue of material fact as to whether any acts of money laundering occurred subsequent to November 1988, all properties acquired by the claimants after that date shall continue to be held by the Government.

I.

The present case stems from the dealings between International Signal and Control Corporation ("ISC"), a United Kingdom corporation based in Lancaster, Pennsylvania, and Armaments Corporation of South Africa Ltd. ("ARMSCOR"), a South African corporation in the business of procuring and marketing weapon systems.[1] Established in 1968, ARMSCOR was owned and operated by the Republic of South Africa to satisfy that country's then abundant weapons appetite. ISC,[2] on the other hand, engaged in the

---

1. The following facts as alleged by the Government are taken as true for purposes of this motion for summary judgment.

2. While the Court chooses to label the company known as ISC as one entity, in truth there were many under this collective moniker. Between

1971 and 1982, International Signal and Control Group ("ISC Group") was the corporate name of the Delaware corporation to which reference as ISC is partially made. From 1982 to 1987, International Signal Control Group PLC ("ISC Group PLC"), a corporation formed under the laws of the United Kingdom, operated as the

design, manufacturing, sale, and brokering of medium to high technology weapon and radar systems, with its activities involving both domestic and international clients. Their operations led them to each other, thus purportedly consummating what the Government has termed as "a long-term conspiracy between ARMSCOR and ISC to break the arms embargo of South Africa."[3] *United States v. Jasin,* 1993 WL 259436 at *1 (E.D.Pa. July 7, 1993).

On October 31, 1991, a sixty-seven count criminal indictment was returned by a grand jury in the Eastern District of Pennsylvania, implicating ARMSCOR and various managers and officers of ISC for their involvement in the conspiracy and the concomitant illegal acts in furtherance of that conspiracy. *See United States v. Armaments Corporation of South Africa, Ltd. et al.,* Crim.A. No. 91–602 (E.D.Pa.). In that indictment, nineteen defendants, including claimant Robert Ivy, were charged with, *inter alia,* conspiracy, securities fraud, wire fraud, tax evasion, money laundering, and violation of the Arms Export Control Act. That criminal proceeding is now pending in the Eastern District of Pennsylvania independent of the instant matter.

After the return of the criminal indictment, the Government initiated this forfeiture action, claiming that various properties owned by those indicted were subject to civil forfeiture. Among those properties considered forfeitable by the Government were various automobiles, a boat, accounts or shares in banks and other financial institutions, and one business. The Government averred in its complaint that forfeiture of those properties that had a connection with the commission of certain illegal acts was permitted under 18 U.S.C. § 981(a)(1)(A) and § 981(a)(1)(C). The pertinent language of those statutes provide as follows:

> (a)(1) ... [T]he following property is subject to forfeiture to the United States:
>
> (A) Any property, real or personal, involved in a transaction or attempted transaction in violation ... of section 1956 or 1957 of this title, or any property-traceable to such property.
>
> . . . .
>
> (C) Any property, real or personal, which constitutes or is derived from proceeds traceable to a violation ... of section ... 1343 of [this] title affecting a financial institution.

18 U.S.C.A. § 981(a)(1)(A), (C) (West Supp. 1995). Pursuant to these measures, the Government claimed that the illicit acts of money laundering and wire fraud that were engaged in by agents of ISC provided a basis for civil forfeiture of various properties owned by those indicted.[4]

Claimants Robert and Irene Ivy are involved in this civil forfeiture litigation because of Robert Ivy's longstanding affiliation with ISC.[5] In response to the Government's civil forfeiture complaint, the claimants filed a motion for summary judgment, arguing that the Government lacked probable cause

---

successor entity to International Signal and Control Group. ISC Group PLC was subsequently purchased by a British corporation known as Ferranti, PLC in November 1987. Shortly after this acquisition, the corporation engaged in its business as Ferranti International Signal, PLC and ISC Group PLC became known as Ferranti International Signal, Inc.

A subsidiary of ISC Group PLC also included under the classification referred to here as ISC is ESI–ISC Disc, Inc., which later did business as ISC Technologies, Inc. in 1982. In approximately September 1986, this subsidiary became known as ISC International Technologies Group, Inc., with ESI Manufacturing, Inc. later replacing that corporation. All of the aforementioned corporations are hereinafter alluded to as ISC.

**3.** At all relevant times, the alleged acts between ARMSCOR and ISC were illegal. *See* Arms Ex-

port Control Act, 22 U.S.C.A. § 2278(b)(2) & note (West 1990 & Supp.1995); Comprehensive Anti–Apartheid Act of 1986, 22 U.S.C. § 5001 & note (West 1990 & Supp.1995) (repealed Nov. 23, 1993).

**4.** The crimes of money laundering and wire fraud are prohibited under 18 U.S.C. §§ 1956 and 1957 and 18 U.S.C. § 1343 respectively.

**5.** Robert Ivy acted as director and officer of ISC Group and its successor entity ISC Group PLC from 1980 until 1989, served as president of ISC Group and as Director and Chairman of the Board of ISC Technologies, Inc., and was chief executive officer of ISC International, a division of ISC Group PLC. Irene Ivy was never employed by ISC, and it does not appear that she ever had any formal ties with the company.

in establishing that the properties are the "proceeds" of the underlying crimes, that property in Irene Ivy's name could not be forfeited due to her "innocent owner" status,[6] and that retroactive application of the 1988 amendments to § 981 violated the ex post facto clause. The Court agreed that as to certain of the defendant properties, the Government had failed to establish probable cause and ordered the properties released forthwith. *United States v. Eleven Vehicles,* 836 F.Supp. 1147 (E.D.Pa.1993). As to the remaining properties, the Court found probable cause to exist.[7] The Court also concluded that the existence of a genuine issue of a material fact as to Irene Ivy's lack of knowledge of the illicit activities alleged in the complaint precluded the granting of summary judgment in her favor on the innocent owner defense. Finally, the Court found that application of the forfeiture statute to properties seized prior to enactment of the 1988 amendments did not violate the ex post facto clause.[8]

Claimants have now filed a second motion for summary judgment embracing a question posed by this Court in its memorandum opinion, that is, whether the application of the 1988 amendments to § 981(a)(1)(A) to the claimants' situation would result in an impermissible retroactive application of law.[9] After response by the Government on the issue, this Court indicated that, before answering the question, it would await the Supreme Court's decision in *Landgraf v. USI Film Products,* —— U.S. ——, 114 S.Ct. 1483, 128 L.Ed.2d 229 (1994), where the issue of the standard that courts should apply when applying a law retrospectively was squarely presented. With the Supreme Court having now provided guidance in *Landgraf,* claimants have renewed their second motion for summary judgment, arguing that allowing the Government to forfeit the remaining defendant properties, consisting of two luxury automobiles, shares in investment funds, corporate stock, bank accounts, and a government savings bond, would be an improper retrospective application of law. The Court now turns to the issues presented.

## II.

### A.

■ In order to prevail on a motion for summary judgment, a moving party must establish that no genuine issues of material fact remain in dispute and that the moving party is entitled to judgment as a matter of law. Fed.R.Civ.P. 56(c). An issue is "genuine" only if "there is evidence from which a reasonable trier of fact could find in favor of the nonmoving party, viewing the record as a whole in light of the evidentiary burden the law places on that party." *United States v. 717 S. Woodward St.,* 2 F.3d 529, 532 (3d Cir.1993) (citing *Anderson v. Liberty Lobby, Inc.,* 477 U.S. 242, 252–56, 106 S.Ct. 2505, 2512–14, 91 L.Ed.2d 202 (1986)). A factual dispute is "material" only if it might affect the outcome of the suit under governing law. *Anderson,* 477 U.S. at 248, 106 S.Ct. at 2510, 91 L.Ed.2d at 202.

---

6. The so-called "innocent owner" defense to § 981 grants immunity from forfeiture to those owners as follows:

   No property shall be forfeited under this section to the extent of the interest of an owner or lienholder by reason of any act or omission established by that owner or lienholder to have been committed without the knowledge of that owner or lienholder.

   18 U.S.C.A. § 981(a)(2) (West Supp.1995).

7. In this Court's prior ruling in this matter, some of the claimants' properties were released because they were acquired prior to the effective dates of the money laundering statutes codified at 18 U.S.C. §§ 1956 and 1957. Since the predicate acts that the claimants are accused of violating did not exist prior to October 27, 1986, it was thereby determined that the Government could not continue to hold on to those properties acquired by the claimants prior to that date. *Eleven Vehicles,* 836 F.Supp. at 1156–57. Among the properties released were the claimants' shares in Balcor Pension Investments IV, approximately $32,473 of the claimants' shares in District Associates of Washington, L.P., and all of the claimants' shares in Gabelli Trust. *Id.* at 1157–58.

8. *See infra* note 16.

9. Without ruling on the argument this Court briefly made mention in a footnote:

   Whether the 1988 amendments to § 981 should be given retroactive effect is an issue of statutory construction that has not been properly presented to this Court by either party. *Eleven Vehicles,* 836 F.Supp. at 1162 n. 19.

■ When required to rule on a motion for summary judgment, the deciding court must view the evidence in the light most favorable to the nonmovant. *Matsushita Elec. Indus. Co. v. Zenith Radio Corp.*, 475 U.S. 574, 587, 106 S.Ct. 1348, 1356, 89 L.Ed.2d 538 (1986); *Mellon Bank Corp. v. First Union Real Estate Equity & Mortgage Invest.*, 951 F.2d 1399, 1404 (3d Cir.1991). The court must accept the nonmovant's allegations as true, and resolve conflicts in the nonmovant's favor. *Big Apple BMW, Inc. v. BMW of N. Am., Inc.*, 974 F.2d 1358, 1363 (3d Cir.1992), *cert. denied,* — U.S. —, 113 S.Ct. 1262, 122 L.Ed.2d 659 (1993). The moving party bears the burden of "showing—that is, pointing out to the district court—that there is an absence of evidence to support the non-moving party's case." *Celotex Corp. v. Catrett*, 477 U.S. 317, 325, 106 S.Ct. 2548, 2554, 91 L.Ed.2d 265 (1986) (quotes omitted). If the movant makes a showing that there is no genuine issue of material fact, the nonmoving party may not rest on its pleadings. In these circumstances, the non-moving party must go beyond the pleadings to "establish the existence of each element on which it bears the burden of proof." *J.F. Feeser, Inc. v. Serv-A-Portion, Inc.*, 909 F.2d 1524, 1531 (3d Cir.1990), *cert. denied,* 499 U.S. 921, 111 S.Ct. 1313, 113 L.Ed.2d 246 (1991).

## B.

### 1.

■ Section 981(a)(1)(A) of Title 18 grants the Government the authority to seize and forfeit any property, real or personal, resulting from the act of money laundering. As with most forfeiture provisions, the range of property subject to forfeiture is broad. *See, e.g., United States v. U.S. Funds in Amount of $3,035,648.50*, 1991 WL 236843 (W.D.N.Y. Nov. 4, 1991) (subjecting more than three million dollars in foreign bank accounts to forfeiture under § 981(a)(1)(A)); *see also United States v. $20,193.39 Currency*, 16 F.3d 344, 345 (9th Cir.1994) (subjecting "hundreds of pieces of gold jewelry" to forfeiture); *United States v. Daccarett*, 6 F.3d 37 (2d Cir.1993) (electronic fund transfers), *cert. denied,* — U.S. —, 114 S.Ct. 1294, 127 L.Ed.2d 648 (1994); *United States v. All Assets of Statewide Auto Parts*, 971 F.2d 896 (2d Cir.1992) (business); *United States v. Real Property in Mecklenburg County, N.C., Known as Leola's Plaza, Located at 1501 West Boulevard*, 814 F.Supp. 468 (W.D.N.C.) (strip shopping center), *vacated sub nom. United States v. Marsh*, 9 F.3d 1545 (4th Cir.1993). As a predicate for § 981 to be effective, the Government must show the commission of a prohibited underlying act. Having abandoned any claim of forfeiture based on wire fraud,[10] the Government seeks to meet this requirement by showing that the claimants have engaged in systematic unlawful acts of money laundering in violation of 18 U.S.C. §§ 1956 and 1957.

■ According to § 981(a)(1)(A), forfeitable property includes "any property, real or personal, *involved in* a transaction or attempted transaction in violation of ... section 1956 or 1957 ..., or any property traceable to such property." 18 U.S.C.A. § 981(a)(1)(A) (West Supp.1995) (emphasis added). The words "involved in" have been interpreted to mean property which "facilitates" the commission of the predicate act. *United States v. Contents of Account Numbers 208-06070 & 208-06068-1-2*, 847 F.Supp. 329, 334-35 (S.D.N.Y.1994); *United States v. All of the Inventories of the Businesses Known as Khalife Bros. Jewelry*, 806 F.Supp. 648, 649-50 (E.D.Mich.1992); *United*

---

**10.** This Court's previous decision on claimants' motion for summary judgment foreclosed the ability of the Government to pursue forfeiture based on alleged acts of wire fraud. At that time, the Government seemingly abandoned its claims to the property at issue based on a predicate wire fraud violation. Summary judgment on that issue was accordingly granted in favor of the claimants. *Eleven Vehicles*, 836 F.Supp. at 1161-62. Indeed, whether the Government could have even reached the property based on the theory it had proposed was highly in doubt since the provision making forfeiture possible upon a violation of the wire fraud laws, § 981(a)(1)(C), authorized only the forfeiture of "property ... which constitutes or is derived from proceeds traceable to a violation of ... [18 U.S.C.] 1343 ... affecting a financial institution." As is the case now, the Government did not claim that the property at issue constitutes proceeds of the claimant's alleged money laundering activities.

States v. Swank Corp., 797 F.Supp. 497, 500 (E.D.Va.1992); United States v. Certain Accounts, 795 F.Supp. 391, 396–97 (S.D.Fla. 1992); United States v. Certain Funds on Deposit in Account No. 01–0–71417, 769 F.Supp. 80 (E.D.N.Y.1991); United States v. All Monies in Account No. 90–3617–3, 754 F.Supp. 1467 (D.Haw.1991); 134 Cong.Rec. S17365 (daily ed. Nov. 10, 1988) ("[T]he term "property involved" is intended to include the money or other property being laundered (the corpus), any commissions or fees paid to the launderer, and any property used to *facilitate* the laundering offense.") (Sen. Biden's analysis of the legislation amending § 981). A facilitation of the underlying crime implies that the property need only make the prohibited conduct "less difficult" or "more … free from obstruction or hinderance [sic]." *United States v. One 1977 Lincoln Mark V. Coupe,* 643 F.2d 154, 157 (3d Cir.) (citation omitted) (analyzing 21 U.S.C. § 881), *cert. denied,* 454 U.S. 818, 102 S.Ct. 97, 70 L.Ed.2d 88 (1981). This Court has previously found that the language of § 981(a)(1)(A) reaches property which not only facilitated the commitment of the predicate violations, but which also constitutes the "proceeds" of said facilitating property. *Eleven Vehicles,* 836 F.Supp. at 1154–56. In this case, the Government is proceeding precisely on this theory, that is, that the defendant properties constitute the "proceeds of facilitating property." According to the Government, ISC is deemed to be the facilitating property for purposes of the forfeiture and the defendant properties, purchased with funds derived from ISC, are the proceeds of the facilitating property.

The Government's argument hinges on the interpretation of the language "involved in a transaction or attempted transaction." Between October 27, 1986 and November 18, 1988, § 981(a)(1)(A) only subjected to forfeiture property representing the "gross receipts" a person obtained from money laundering or property "traceable to such gross receipts." Pub.L. No. 99–570, Title I, § 1366(a), 100 Stat. 3207–35 (1986). "Gross receipts were defined as 'only the commission earned by the launderer …, and not the corpus laundered itself.'" *United States v. Real Property Including Any Buildings, Ap-*purtenances, and Improvements Thereon, Located at 4643 W. Kennedy Boulevard, Tampa, Fla., 1990 WL 305391 at *2 n. 1 (M.D.Fla. Feb. 12, 1990) (citing S.Rep. No. 433, 99th Cong., 2d Sess. 23 (1986)); *see also* 1 David B. Smith, *Prosecution and Defense of Forfeiture Cases* ¶ 5.01 n. 17 (1991). The defendant properties were purchased by the claimants with money Robert Ivy received from his years of employment with ISC. Those assets therefore could not properly be attributed as "gross receipts" of the illegal acts of money laundering. Nor could the properties be considered "facilitating" property, since the vehicles and bank accounts in question were plainly not used in connection with the acts of money laundering, at least not to an extent that the law recognizes. *See United States v. One 1989 Jaguar XJ6,* 1993 WL 157630 at *2 (N.D.Ill. May 13, 1993) (finding an insufficient connection between an automobile used in commuting to and from the alleged illegal activity to effect forfeiture under § 981(a)(1)(A)). Claimants argue that, because at the time the properties were acquired the critical "involved in" language was not part of the statute, the defendant properties are not subject to forfeiture. The specific issue thus to be resolved by the Court is whether the "involved in" language of the 1988 amendments applies retroactively to the defendant properties, making them subject to forfeiture as proceeds of facilitating property.

**2.**

The judicial aversion to applying laws retrospectively has deep roots in our jurisprudence. *See Kaiser Aluminum & Chemical Corp. v. Bonjorno,* 494 U.S. 827, 842–44, 855–56, 110 S.Ct. 1570, 1579–81, 108 L.Ed.2d 842 (1990) (Scalia, J., concurring). The concern is that the judiciary should not give present effect to those laws to which the parties were without notice at the time the events in question occurred. This principle directly clashed with the aphorism that a court should invoke the law in effect at the time the case is decided. Consequently, judicial confusion and uncertainty plagued this area of the law. *Compare Bradley v. Richmond Sch. Bd.,* 416 U.S. 696, 711, 94 S.Ct. 2006, 2016, 40 L.Ed.2d 476 (1974) (stating that a

court shall "apply the law in effect at the time it renders its decision, unless doing so would result in manifest injustice or there is statutory direction or legislative history to the contrary") *with Bowen v. Georgetown Univ. Hosp.*, 488 U.S. 204, 208, 109 S.Ct. 468, 471, 102 L.Ed.2d 493 (1988) (declaring that laws shall not be given retroactive effect "unless their language requires such a result"). The Supreme Court addressed this tension in the case of *Landgraf v. USI Film Prods.*, —— U.S. ——, 114 S.Ct. 1483, 128 L.Ed.2d 229 (1994).[11]

*Landgraf* considered whether a provision that authorized the collection of compensatory and punitive damages for violation of Title VII of the Civil Rights Act, which had been enacted into law after the events at issue in the lawsuit but before the matter came to trial should have been given retroactive effect. Congress did not evidence whether the statute should be applied to conduct that occurred before the statute's enactment. Specifically, the Supreme Court inquired whether, in the face of congressional silence on the issue of retroactivity, the defendant's liability could be expanded to include compensatory and punitive damages, even though such relief was not available to plaintiff at the time the events which gave rise to the lawsuit occurred. The Supreme Court concluded that it could not.

The *Landgraf* Court formulated a rule of decision for those instances where the intent of Congress on the retroactivity of a statute is not discernible. The case instructs:

> When a case implicates a federal statute enacted after the events in a suit, the court's first task is to determine whether Congress has expressly prescribed the statute's proper reach. If Congress has done so, of course, there is no need to resort to judicial default rules. *When, however, the statute contains no· such express command, the court must determine whether the new statute would have retroactive effect, i.e., whether it would impair*

rights *a party possessed when he acted, increase a party's liability for past conduct, or impose new duties with respect to transactions already completed.* If the statute would operate retroactively, our traditional presumption teaches that it does not govern absent clear congressional intent favoring such result.

*Landgraf*, —— U.S. at ——, 114 S.Ct. at 1505, 128 L.Ed.2d at 260 (emphasis added). Applying *Landgraf* to this case, in order for claimants to succeed on this motion for summary judgment, the application of the 1988 amendments to § 981(a)(1)(A) to the defendant properties must result in the specific "retroactive effect" forbidden by the Supreme Court.

■ In enacting the November 18, 1988 amendments, Congress did not indicate whether it intended the amendments to apply to money laundering occurring before the enactment date. On this point, counsel for both sides are in agreement. Claimants argue that their rights have been impaired and that their liability for alleged acts of money laundering has been impermissibly increased, because at the time the defendant properties were acquired by claimants, § 981(a)(1)(A) did not allow the Government to reach properties "involved in" money laundering. The Government in response, however, has submitted that at all relevant times, not only were the acts outlined in the ARMSCOR indictment illegal, but commission of those offenses would have resulted in forfeiture under the criminal penalties provided for by the Racketeer Influenced and Corrupt Organizations Act ("RICO").

Claimants retort to the Government's argument is to dispute the validity of measuring whether the defendant properties were subject to forfeiture by reference to other statutes. The Court disagrees. Under *Landgraf*, in order to determine whether the rights asserted are "impaired," the Court must necessarily make an inquiry as to when the rights were vested. This analysis com-

---

**11.** The Court actually heard another case, *Rivers v. Roadway Express, Inc.*, —— U.S. ——, 114 S.Ct. 1510, 128 L.Ed.2d 274 (1994), concurrently with *Landgraf* on this issue, combining argument on the two. In *Rivers*, the Court interpreted a different provision of the same Act at issue in *Land-*

*graf*. While *Rivers* applies the same law and springs from the same set of oral arguments, reference will be made primarily to *Landgraf*, as that is where the law relevant to this case is found.

pels a consideration of statutory prohibitions other than the specific law challenged. Put differently, if a previously enacted statute already proscribed the conduct at issue, and by consequence an individual had no "right" to lawfully engage in such conduct, it follows that a subsequent statute forbidding the same conduct could not be deemed to have impaired any vested rights, as none existed. Indeed, Justice Story's formulation of the judicial default rules while he sat on circuit—adopted by the Supreme Court in *Landgraf*—includes a search for such a vested right. That measure reads:

> Every statute, which takes away or impairs vested rights acquired under existing *laws,* or creates a new obligation, imposes a new duty, or attaches a new disability, in respect to transactions or considerations already past, must be deemed retrospective. . . .

*Landgraf,* —— U.S. at ——, 114 S.Ct. at 1499, 128 L.Ed.2d at 250 (quoting *Society for the Propagation of the Gospel v. Wheeler,* 22 F.Cas. 756 (No. 13,156) (CCDNH 1814)) (emphasis added). Consequently, in order to carry out the *Landgraf* analysis in this case, the Court shall consider the conduct the Government contends was prohibited by criminal RICO forfeiture law prior to November 18, 1988.

The Government is correct that under criminal RICO this property would have been subject to forfeiture at all relevant times, viz., from October 27, 1986, when §§ 1956 and 1957 were enacted, to November 18, 1988, the enactment date of the amendments to § 981(a)(1)(A). *See* 18 U.S.C.A. § 1963 (West Supp.1995).[12] Indeed, the claimants have made hardly an argument stating that this is not so. Under the Government's theory, the defendant properties, now consisting of automobiles, bank accounts, a government bond, and shares in stock, all of which had their origin in the salary that Robert Ivy drew from ISC, would all have been within the ambit of forfeiture based on the same acts by the claimants had the Government brought this action under RICO instead of as a civil forfeiture action. Rather than being the end of the analysis as the Government claims, this is only the beginning.

Important differences exist between § 1963(a) and § 981(a)(1)(A) that must be factored into the calculus. Notably, under criminal RICO, because forfeiture of the subject properties is made via a criminal in personam forfeiture action, forfeiture under RICO requires an underlying criminal conviction. *United States v. Chinn,* 687 F.Supp. 125, 127 (S.D.N.Y.1988); *United States v. Ambrosio,* 575 F.Supp. 546, 550 (E.D.N.Y. 1983). All elements of criminal culpability in a conviction based on RICO must, of course, be proven beyond a reasonable doubt. *In re Winship,* 397 U.S. 358, 361–64, 90 S.Ct. 1068, 1071–73, 25 L.Ed.2d 368 (1970). By contrast, a § 981(a)(1)(A) forfeiture proceeding is a civil in rem action where the Government must only prove by the preponderance of the evidence that criminal conduct transpired.

---

12. While the route is somewhat circuitous, it is effective nonetheless. Section 1963 specifies:

(a) Whoever violates any provision of section 1962 of this chapter shall be fined under this title or imprisoned not more than 20 years . . ., or both, and shall forfeit to the United States irrespective of any provision of State law—

(3) *any property constituting, or derived from, any proceeds which the person obtained, directly or indirectly, from racketeering activity . . . in violation of section 1962.*

18 U.S.C.A. § 1963(a)(3) (emphasis added) (West Supp.1995). Section 1962(c), meanwhile, makes it unlawful:

(c) . . . for any person employed by or associated with any enterprise engaged in, or the activities of which affect, interstate or foreign commerce, to conduct or participate, directly or indirectly, in the conduct of such enterprise's affairs *through a pattern of racketeering activity*
. . . .

18 U.S.C.A. § 1962(c) (West 1984) (emphasis added). Racketeering activity is finally defined in 18 U.S.C. § 1961(1) as:

any act that is indictable under any of the following provisions of title 18, United States Code: . . . section 1956 (relating to the laundering of monetary instruments), section 1957 (relating to engaging in monetary transactions in property derived from specified unlawful activity).

18 U.S.C.A. § 1961(1) (West Supp.1995). Because acts found to violate the money laundering provisions of §§ 1956 and 1957 have been included within § 1961(1) prior to October 27, 1986, at all times since then, violations of those provisions have subjected the claimants' properties to forfeiture under § 1963(a)(3). *See* Pub.L. No. 99–570, § 1365(b).

*See United States v. 1988 Oldsmobile Cutlass Supreme,* 983 F.2d 670, 674–75 (5th Cir. 1993). The question is, therefore, whether the lowered evidentiary burden on the Government required by § 981(a)(1)(A) took "away or impair[ed] vested rights," *Landgraf,* —— U.S. at ——, 114 S.Ct. at 1499, 128 L.Ed.2d at 250, that the claimants enjoyed prior to the statute's enactment.

■■■ The claimants have not specifically identified any vested right that would be impaired by reducing the burden of proof a plaintiff must meet in a purely civil action. Instead, the claimants point to the ex post facto clause of the United States Constitution [13] as the source of the right they claim was impaired. The ex post facto clause prohibits Congress from enacting retroactive legislation that punishes a person for the commission of a crime.[14] The clause has been universally held to apply only to criminal and penal statutes, *Collins v. Youngblood,* 497 U.S. 37, 41, 110 S.Ct. 2715, 2718, 111 L.Ed.2d 30 (citing *Calder v. Bull,* 3 U.S. (3 Dall.) 386, 390–91, 1 L.Ed. 648 (1798)); *see also United States v. Saenz–Forero,* 27 F.3d 1016, 1019 (5th Cir.1994) ("An ex post facto law is a criminal or penal measure which is retrospective and is disadvantageous to the offender . . . ."), and in the absence of finding § 981(a)(1)(A) to impose punishment,[15] would have no application in this case.

The Court need not decide whether § 981(a)(1)(A), while technically a civil stat-

---

**13.** The Constitution contains two ex post facto clauses, one addressed to Congress and one addressed to the states. *See* U.S. Const. Art. I, §§ 9, 10. Reference is made in this case exclusively to the ex post facto clause pertaining to Congress, as § 981(a)(1)(A) is a federal statute.

**14.** Specifically, the Supreme Court has defined the protection of the ex post facto clause as follows:

It is settled, by decisions of this Court so well known that their citation may be dispensed with, that any statute which punishes as a crime an act previously committed, which was innocent when done; which makes more burdensome the punishment for a crime, after its commission, or which deprives one charged with crime of any defense available according to law at the time when the act was committed, is prohibited as *ex post facto. Collins v. Youngblood,* 497 U.S. 37, 41, 110 S.Ct. 2715, 2718, 111 L.Ed.2d 30 (1990) (quoting *Beazell v. Ohio,* 269 U.S. 167, 169–70, 46 S.Ct. 68, 68–69, 70 L.Ed. 216 (1925)).

**15.** The denomination of § 981(a)(1)(A) as "civil" rather than "criminal" is not dispositive of whether the application of the statute implicates constitutional protections. In *United States v. Halper,* 490 U.S. 435, 109 S.Ct. 1892, 104 L.Ed.2d 487 (1989), the Supreme Court held that the labels civil and criminal were not determinative of whether the Fifth Amendment's double jeopardy clause applied to a civil action brought pursuant to the False Claims Act, 31 U.S.C. §§ 3729–3731. Noting that "the notion of punishment . . . cuts across the division between the civil and criminal law," the Supreme Court ruled that the pertinent question in determining whether the protections of the double jeopardy clause applied to the False Claims Act was not whether the statute was civil or criminal, but instead, whether the statute constituted "punishment." *Halper,* 490 U.S. at 447–48, 109 S.Ct. at 1901–02, 104 L.Ed.2d at 487. The Supreme Court ruled in *Halper* that punishment is imposed by a civil statute when the statute has "a civil sanction that cannot fairly be said to serve a remedial purpose, but rather can only be explained as also serving either retributive or deterrent purposes." *Id.* at 448, 109 S.Ct. at 1902, 104 L.Ed.2d at 487.

In *Austin v. United States,* —— U.S. ——, 113 S.Ct. 2801, 125 L.Ed.2d 488 (1993), the Supreme Court applied the test formulated in *Halper* and found two civil forfeiture provisions, 21 U.S.C. §§ 881(a)(4) and (a)(7), to impose punishment. Reiterating that the sanction attached to a civil statute must be solely remedial in order for the statute to escape the conscriptions attendant to the imposition of punishment by the Government, the Supreme Court ruled that both §§ 881(a)(4) and (a)(7) were penal in nature and therefore subject to the Eighth Amendment's excessive fines clause. *Id.* at ——, 113 S.Ct. at 2812, 125 L.E.2d 488.

Taking guidance from the results in *Halper* and *Austin,* courts have more recently ruled that, in addition to the excessive fines clause, civil forfeiture statutes can implicate concerns under the Fifth Amendment's double jeopardy clause. *See United States v. Ursery,* 59 F.3d 568, 571 (6th Cir.1995) (holding that a criminal conviction achieved after the criminal defendant had settled an earlier civil forfeiture proceeding based on the same criminal acts violated the double jeopardy clause); *United States v. $405,089.23 U.S. Currency,* 33 F.3d 1210, 1221–22 (9th Cir.1994) (finding civil forfeiture proceeding based partly on § 981(a)(1)–(A) to be barred as a result of the double jeopardy clause where a criminal conviction based on the same conduct had already been attained), *amended on denial of rehearing,* 56 F.3d 41 (9th Cir.1995); *United States v. Tilley,* 18 F.3d 295, 297–98 (5th Cir.) ("If the prior civil forfeiture proceeding, which was predicated on the same drug trafficking offenses as charged in the indictment, constituted a "punishment," the Double Jeopardy Clause will bar the pending

ute, is in reality penal in nature and thus subject to the prohibitions against retroactivity mandated by the application of the ex post facto clause.[16] As the Ninth Circuit recently pointed out while construing 18 U.S.C. § 984, another civil forfeiture statute, the lowering of the burden of proof in a civil forfeiture case in a manner that allows the Government to achieve the result of a criminal forfeiture but without having to prove its case beyond a reasonable doubt "may impact upon substantial rights" in a way that supports the presumption against retroactivity absent clear indication of Congressional intent to the contrary." *$814,254.76 in U.S. Currency*, 51 F.3d at 212. It is the impact upon these "substantial rights" that "directly implicates the concerns that animate the *Landgraf* default rule against retroactivity." [17] *Id.*

■ By employing § 981(a)(1)(A) rather than § 1963 of the RICO Act, the Govern-

ment achieves the goals of criminal forfeiture by relying on a different standard of proof, one that permits forfeiture upon a lesser showing of culpability. Such a result cannot be countenanced under *Landgraf.* Therefore, the 1988 amendments to § 981(a)(1)(A) shall not be applied to seize any of claimants' property to the extent that the property constituted the proceeds of property facilitating illegal conduct occurring before November 18, 1988.

**3.**

■ The Government further contends that, even assuming that the retroactive application of the 1988 amendments is not appropriate in this instance, summary judgment in favor of the claimants is not warranted because there is a genuine issue of fact as to whether all illegal money laundering here was concluded as of November 18, 1988. If the Government is correct, § 981(a)(1)(A)

---

criminal trial."), *cert. denied,* —— U.S. ——, 115 S.Ct. 574, 130 L.Ed.2d 490 (1994). While stopping short of fully endorsing the position taken by these courts, the Third Circuit has recognized the plausible merit to expanding *Austin* beyond the excessive fines clause arena. *See United States v. Baird,* 63 F.3d 1213, 1222 (3d Cir.1995) ("Without adopting a position on the matter, we can certainly understand how a court might conclude that civil forfeiture under 21 U.S.C. § 881(a)(6) of drug proceeds constitutes punishment for double jeopardy purposes."); *see also id.* 63 F.3d at 1222 (Sarokin, J., dissenting) (finding the reasoning in *$405,089.23 U.S. Currency* to be "persuasive"). Given the disposition of this case, the Court offers no views as to whether the double jeopardy clause is implicated in the successive prosecutions of at least one of the claimants. *See United States v. Ogbuehi,* 897 F.Supp. 887, 890 (E.D.Pa.1995) (Ditter, J.) (refusing to find a double jeopardy violation and stating that civil "forfeiture of the proceeds of unlawful activity is not punishment because the purported owner has lost nothing to which he was ever lawfully entitled").

**16.** When considering a previous argument made by the claimants under the ex post facto clause, this Court found it "questionable" whether the ex post facto clause applied to the instant civil forfeiture provision. *See Eleven Vehicles,* 836 F.Supp. at 1162; *see also United States v. $814,-254.76 in U.S. Currency,* 51 F.3d 207, 212 n. 6 (9th Cir.1995) (determining in light of *Austin* that a "question" remains as to whether the ex post facto clause applies to civil forfeiture provisions). Because the Court decides this case based on the

statutory construction of § 981(a)(1)(A), it specifically refrains from revisiting whether the ex post facto clause prohibits the application of the 1988 amendments to the defendant properties. *See Gutierrez de Martinez v. Lamagno,* —— U.S. ——, ——————, 115 S.Ct. 2227, 2237–38, 132 L.Ed.2d 375 (1995) (O'Connor, J., concurring) (specifying preference in construing statutes so as to avoid constitutional questions); *Ashwander v. TVA,* 297 U.S. 288, 347, 56 S.Ct. 466, 483, 80 L.Ed. 688 (1936) (Brandeis, J., concurring) ("[I]f a case can be decided on either of two grounds, one involving a constitutional question, the other a question of statutory construction or general law, the Court will decide only the latter.").

**17.** In *$814,254.76 in U.S. Currency* the Ninth Circuit was required to consider whether § 984 could be applied retroactively to forfeit money in a bank account where no guidance on the statute's retroactivity had been given by Congress. Section 984 permitted the forfeiture of all money held in an account that was used for money laundering, regardless of whether the funds could be directly traced to the crime. The statute had been enacted by Congress after the underlying criminal conduct had been completed, and prior to its passage, the property that had been seized by the Government was not subject to civil forfeiture. The Government contended, in an argument similar to the one made in this case, that application of § 984 to past criminal conduct did not violate the principles set forth in *Landgraf* because the funds were able to be confiscated under an already existing *criminal* forfeiture statute.

could be applied to seize those properties acquired after November 18, 1988, since they would have constituted proceeds of property "involved in" illicit money laundering. This Court has already found that the Government has established probable cause to believe that properties acquired after October 27, 1986 were derived from the salary Robert Ivy drew from ISC. *Eleven Vehicles,* 836 F.Supp. at 1159–60. No ruling has been made, however, concerning the duration of the money laundering activities which is alleged to have generated the income Robert Ivy received from ISC. Since the detained properties cannot constitute the proceeds of property "involved in" money laundering unless there was an instance of money laundering occurring after November 18, 1988, it follows that an act of illegal money laundering that occurred after November 18, 1988 is a necessary predicate to continued detention of the claimants' property. Moreover, to constitute forfeitable property that was purchased with proceeds of property "involved in" money laundering, the property must have been acquired by the claimants after November 18, 1988.

In support of its allegation that ISC agents engaged in money laundering after November 18, 1988, the Government directs the Court to the indictment in *United States v. ARMSCOR,* which provides various references to money laundering activity that the Government says continued beyond November 1988. Specifically, the Government avers as follows:

> 81. Between in or about 1985 and in or about 1989, the defendants would and did export in excess of $4,400,000 worth of fuze power supplies to Darlon in the [Republic of South Africa] on behalf of defendant Fuchs to maintain defendant Fuchs' pro-

ductions line of fuzes and to assist Fuchs fulfill its fuze production requirements with Iraq.

Complaint ex. 1 at 25.

> 27. Between May, 1979 and December, 1988, defendant Faulds received $458,633 in commission payments for ESI's business with ARMSCOR's front companies, including $218,000 that Faulds directed to be deposited into an account that he established in the name of EPC Associates.
>
> 28. Between October, 1988 and July, 1989, defendant Schuler received $103,050 from Swiss bank accounts controlled by James H. Guerin.

Complaint ex. 1 at 31.

> 100. On or about March 3, 1989, defendant Radcliffe telefaxed defendant Davis regarding a payment to an ARMSCOR front company, ATS.

Complaint ex. 1 at 41.

> 35. In or about July, 1989, James H. Guerin met with defendant Shireman and told him that $255,000 would be set aside for his use in a Swiss bank account.
>
> 36. In or about August, 1989, James H. Guerin opened a Swiss bank account and deposited $100,000 in the name of "Greenleaf" for the benefit of Robert Clyde Ivy, a/k/a "Greenleaf."

Complaint ex. 1 at 90.[18]

Claimants argue that the Court may not consider the allegations cited in the five paragraphs above by the Government. In particular, they state that "[t]he Court has already decided" that only the six counts of money laundering in the ARMSCOR indictment may serve as the predicate acts for forfeiture. Claimants' Reply Mem. in Support of Claimants' Renewed Second Motion for Summ.J. at 11–12.[19] The Court dis-

---

18. The above constitute the only allegations relied upon by the Court in finding that there is a genuine issue of fact whether money laundering continued beyond November 18, 1988. The Court gives no weight to the information contained in Exhibit I to the Government's brief ("Summary of Money Laundering/Monetary Transactions Conspiracy November. 1, 1986 Through 1989"), which is entirely unintelligible and is attached to the Government's opposition to the motion for summary judgment without adequate explanation.

19. The claimants point to the following excerpt:

> Claimant Robert Ivy, along with various individuals and corporate entities, is charged with a passel of crimes, including conspiracy, securities fraud, and violation of the Arms Export Control Act. Of import to the instant case are the six counts of money laundering, in violation of 18 U.S.C. §§ 1956, 1957, and the two counts of wire fraud, in violation of 18 U.S.C. § 1343, charged in the ARMSCOR indictment.... These crimes are the predicate of-

agrees. Without saying so in so many words, the claimants' argument appears to be bottomed on the law of the case doctrine, which "provides that a court should not re-examine an issue already decided in the same case." *Bridge v. United States Parole Comm'n,* 981 F.2d 97, 103 (3d Cir.1992). The tenet does not, however, aid the claimants' cause. First, the law of the case directs a court's discretion, and does not mandate that a court blindly follow an earlier result if injustice would result. *Schultz v. Onan Corp.,* 737 F.2d 339, 345 (3d Cir.1984). Second, the principle only pertains to conclusions of law, *Arizona v. California,* 460 U.S. 605, 618, 103 S.Ct. 1382, 1391, 75 L.Ed.2d 318 (1983), and does not apply to those legal conclusions which are merely dicta and are not part of the judgment in a case, *Coca–Cola Bottling Co. of Shreveport, Inc. v. The Coca–Cola Co.,* 988 F.2d 414, 428–30 (3d Cir. 1993). Even if the Court were to accept the claimants' argument that the discussion that they refer to constituted a legal interpretation rather than a factual finding, those statements are dicta and were not relied upon by the Court in reaching its summary judgment. The Court is therefore not restrained by the law of the case doctrine from considering the Government's allegations in the ARMSCOR indictment that fall outside of the six counts of money laundering formally charged.

Rather than providing any evidence contradicting the Government's accusations, the claimants have simply chosen to deny them. As movants for summary judgment, however, the claimants have the burden of demonstrating "that there is an absence of evidence to support the non-moving party's case." *Celotex,* 477 U.S. at 325, 106 S.Ct. at 2554, 91 L.Ed.2d at 265. Their unsupported repudiation of the Government's assertions does not satisfy this burden. With the Government being entitled to every reasonable inference in its favor as the non-movant, *Anderson v. Liberty Lobby, Inc.,* 477 U.S. 242, 255, 106 S.Ct. 2505, 2513, 91 L.Ed.2d 202 (1986), the Court therefore concludes that there is a genuine issue of fact as to whether money laundering was facilitated by ISC after November 18, 1988. Consequently, while all

properties acquired by the claimants prior to the passage of the 1988 amendments to § 981(a)(1)(A) shall be released, the Government shall not be required to relinquish those properties acquired after November 18, 1988.

### III.

The amendments to § 981(a)(1)(A) may not be applied retroactively to forfeit facilitating property or proceeds thereof based on prohibited money laundering occurring prior to November 18, 1988. As a genuine issue of material fact remains in this case concerning whether money laundering occurred after that date, all properties obtained by the claimants subsequent to November 18, 1988 shall continue to be held. All other properties, however, shall be relinquished.

---

fenses upon which the Government's forfeiture is based.

*Eleven Vehicles,* 836 F.Supp. at 1151 (footnote omitted).